**Neal D. and Annette M. HOLTVOGT, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. C–3–94–328.

United States District Court, S.D. Ohio, Western Division, at Dayton.

May 20, 1995.

W. Michael Conway, Dayton, OH, for plaintiffs.

Carina J. Campobasso, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

## DECISION AND ORDER
## FOR JUDGMENT

MERZ, United States Magistrate Judge.

This case came on for trial to the Court sitting without a jury at 10:30 a.m. on Friday, May 19, 1995, and was concluded at 7:20 p.m. that date. The parties have unanimously consented to plenary magistrate judge jurisdiction under 28 U.S.C. § 636(c) and the case was referred to Magistrate Judge Merz by District Judge Walter Herbert Rice on that basis (Doc. # 16).

The Court's findings of fact and conclusions of law as required by Fed.R.Civ.P. 52 are embodied in this Decision and Order for Judgment.

The Court has undisputed subject matter jurisdiction of this matter pursuant to 28 U.S.C. § 1346(a)(1).

Plaintiffs brought this action to recover refunds of assertedly overpaid federal income taxes for 1983, 1984, 1985, and 1986. Prior to trial, they voluntarily dismissed with prejudice (Doc. # 8) their claims as to 1984 and 1985, since these years are covered by a Stipulation in Tax Court litigation between the parties (PX 9[1]). The trial was accordingly limited to tax years 1983 and 1986. Defendant filed a Motion for Summary Judgment as to the 1986 year (Doc. # 10). Although the motion papers from both parties were very helpful to the Court in preparing for trial, the Court did not decide that Motion prior to trial and evidence was taken on

---

**1.** Plaintiffs' Trial Exhibits are referred to as "PX." Defendant's as "DX," and the Court's as "CX."

the 1986 year. Accordingly, the Motion for Summary Judgment is DENIED AS MOOT without prejudice to the merits of the Government's position.

### COUNT 1—THE 1983 TAX YEAR

On April 15, 1984, the Plaintiffs filed an Application for Automatic Extension of Time to File U.S. Individual Income Tax Return (Form 4868) for the tax year ended December 31, 1983. No copy of the document is available because the Internal Revenue Service file related to the Plaintiffs for 1983 was routinely destroyed in or around January, 1994, before suit was filed, pursuant to the Service's regular retention policy for such files. (The Form 4868 may have been destroyed earlier since those forms have a shorter retention period in the usual course of IRS practice.) The extension application was automatically granted, allowing Plaintiffs until August 15, 1984, to file their 1983 federal income tax return, Form 1040.

The Plaintiffs did not in fact file their 1983 return until April 15, 1987. PX 1 is a copy of the first two pages of this return, provided to Plaintiffs' counsel by Plaintiff Neal Holtvogt who obtained an authentic copy of the original from the Service.[2]

This return showed a tax liability of –0–, federal income tax withheld in the amount of $3,193.02, and a claimed credit in the same amount ($3,193.02) to be applied to Plaintiffs' 1984 federal income tax liability.

There are several errors on this return. The Plaintiffs claimed $320 as a charitable contribution deduction on the 1983 return, but the maximum charitable contribution deduction to which they were entitled on the 1983 return was $25, despite the fact they may have given more. Mr. Holtvogt admit-

ted at trial the accuracy of the Government's position on this point.

As Mr. Holtvogt also admitted, he and his wife failed to attach the required supporting forms for the residential energy credit (Form 5695), the investment tax credit, and work incentive training program credits that they claimed on page 2 of the 1983 return. Although the box for Form 3468 is checked on PX 1 and Mr. Holtvogt admitted that he would have had to use that form to calculate the amount of the general business credit claimed, it is not part of CX 3 and was not separately produced at trial. Nor is it part of PX 2, Plaintiffs' purported revised 1983 return, which Mr. Holtvogt attempted unsuccessfully to file with Tax Examiner Mark Vilaboy on March 5, 1991.

Plaintiffs' claim for a refund for 1983 depends upon their assertion that the Internal Revenue Service never disallowed the claimed credits on the 1983 return. As noted above, the Service's paper file for 1983 has been destroyed. Unsurprisingly,[3] there is no person with an actual memory of sending the appropriate disallowance forms. To prove they were sent, the United States offered the testimony of Deanna Bilz,[4] who has worked in the relevant sections of the IRS Cincinnati Service Center since 1977 and who had a thorough working knowledge of the standard practice with respect to processing returns.

■ Mr. Holtvogt carefully identified during his testimony the handwriting on PX 1 which was his. Ms. Bilz was able to interpret the remaining notations, most importantly the notation in the lower left-hand corner "12C 23468 11919.43." This indicates that the initial processor of the return determined that the Holtvogts should be sent a 12 C letter asking them to supply the requisite forms to support their claimed credits of

2. The full copy obtained by Mr. Holtvogt and presented in open court is now marked as CX3 and sua sponte admitted in evidence for sake of completeness by analogy to Fed.R.Evid. 106.

3. According to Ms. Bilz, the Cincinnati Service Center is now processing some 15 million federal income tax returns a year. That would make probably over 100 million since Mr. Holtvogt filed his 1982 return in April, 1987.

4. Ms. Bilz was added late to the Government's witness list over Plaintiffs' objections. To obvi-

ate those objections, the Court advised the parties during the final pretrial conference and formally ruled during trial that it would permit Ms. Bilz to testify and then would allow Plaintiffs a continuance if necessary to obtain rebuttal testimony. After Ms. Bilz testified, no such continuance was sought. In addition, Plaintiffs' counsel was afforded the practical equivalent of a telephone deposition of Ms. Bilz the day before trial, as the trial transcript will reflect.

$11,919.43. The usual practice of the IRS at the time would have been for a typist to prepare a 12 C letter requesting the missing information and for the return to have been placed in a suspense file for 45 days to await a taxpayer response. If no response was received, the credits claimed without the supporting forms or schedules would be disallowed by issuance of a CP–12 notice.

█ The Internal Revenue Service enjoys a presumption of official regularity. *Pursifull v. United States,* 849 F.Supp. 597, 600–601 (S.D.Ohio 1993). This presumption is that what is purported to have been done, was in fact properly done. *See United States v. Ahrens,* 530 F.2d 781, 785 (8th Cir.1976) (IRS enjoys presumption of regularity, citing *United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926)); *United States v. Dixon,* 672 F.Supp. 503 (M.D.Ala.1987), *aff'd,* 849 F.2d 1478 (11th Cir.1988). In this case, the presumption operates to allow the Court to find that, absent evidence to the contrary, documentation in the Internal Revenue Service's administrative file showing that the Letter 12C and the CP–12 notice had been sent to the plaintiffs would be sufficient to prove that the notices had been sent. Here, unfortunately, the administrative file was destroyed pursuant to the Internal Revenue Service's normal record retention policy before the Plaintiffs filed the instant action, although it still existed in May, 1993, when Mr. Holtvogt requested copies of the 1983 and 1986 returns (See p. 10 of CX 3).

Ms. Bilz's testimony concerning the Service's practice sufficiently supports the inferences that the IRS sent the plaintiffs a "Letter 12C" requesting them to supply the missing forms for the 1983 return, that the Plaintiffs did not respond to the Letter 12C, and that the Service disallowed the credits listed in paragraph 6, totaling $12,070.22, because the plaintiffs did not respond to the Letter 12C. The Service allowed a partial credit for political contributions in the amount of $25.00, for which no separate supporting form was required. The Internal Revenue Service issued a CP–12 Notice informing the Plaintiffs that the credits for which they had failed to supply the required forms had been disallowed. The Plaintiffs also did not respond to the CP–12 Notice.

Mr. Holtvogt attempted to rebut these inferences by testifying that he is meticulous about keeping records, has kept everything he has received from the IRS, and has no copies of the 12C letter, the CP–12 Notice, or of any response thereto. He also testified he has no recollection of seeing either notice. With respect, the Court cannot credit Mr. Holtvogt's testimony regarding record keeping, based in large part on his repeated failure to file federal income tax returns within the time allowed by law or within the time extended. Testimony of Mr. Vilaboy and Mr. Serena established that while Mr. Holtvogt may keep most or all pieces of paper relevant to his tax situation, his ability to retrieve them when needed is seriously problematic.

After the IRS corrected the charitable contribution from $320 to $25, the Plaintiffs' taxable income for 1983 was $21,615.98, not $21,320.98 as they claimed on their 1983 return, and their tax was $2,972.00, not $2,903.00. After disallowance of the unsupported credits, the Plaintiffs' tax liability for 1983 was $2,947.00 (total tax of $2,972.00 less the allowed political contribution credit of $25.00). The correct overpayment of tax with respect to the 1983 return is $246.02 (federal income tax withheld of $3,193.02 less a tax liability of $2,947.00). The $246.02 overpayment was applied, as requested by the Plaintiffs, to their 1984 federal income tax liability. Plaintiffs are not entitled to any additional refund for the 1983 tax year.

## COUNT 4—THE 1986 TAX YEAR

On April 15, 1987, the Plaintiffs filed an Application for Automatic Extension of Time to File U.S. Individual Income Tax Return (Form 4868) for tax year ended December 31, 1986, which was automatically granted, extending the time to file to August 15, 1987. The Plaintiffs remitted $9,006.00 with their 1986 Form 4868 by means of Check # 906

(PX 3 [5]) which bears the notation "deposit for 86 tax" on the memo line.

Plaintiffs filed their 1986 return on May 1, 1990 (PX 5, DX 1, CX 2 is the original). This return shows (line 32) an adjusted gross income of $52,414.14, a claimed general business credit (line 47) of $1,241.24, a tax due (line 55) of $10,580.74, a credit for federal income tax withheld (line 56) of $4,543.70, and, on line 57, "1986 estimated tax payments and amount applied from 1985 return," the amount of $9,006.00. There is no entry on line 59: "Amount paid with Form 4868."

The 1986 tax return as filed was missing Schedules C, E, F, and SE and Form 3800 as shown by the notation in red ink in the lower left-hand corner, again as interpreted by Ms. Bilz. The Court finds the Internal Revenue Service sent the Plaintiffs a Letter 12C requesting them to supply the missing forms for the 1986 return, but the Plaintiffs did not respond. The Service disallowed the business credit (reported on Form 3800) because the plaintiffs did not respond to the Letter 12C. However, it accepted the Plaintiffs' figures with respect to the income items unsupported by the Schedules C, E, F, and SE as shown by its preparation of "dummy" Schedules C, E, and F (attached to PX 5, DX 1, and CX 2 with figures in red.)

The Internal Revenue Service issued a CP–12 Notice informing the plaintiffs that the business credit in the amount of $1,241.24, which they had claimed but for which they had failed to supply the Form 3800, had been disallowed but the Plaintiffs did not respond.

After disallowance of the unsupported credit, the Plaintiffs' tax liability for 1986 was $11,821.98 ($10,580.74 as originally claimed plus $1,241.24 for the disallowed credit).

Plaintiffs assert that they filed a revised return on February 20, 1992, by hand-delivering the same to Mark Vilaboy in February, 1992. Mr. Vilaboy does not remember receiving the revised return (PX 6) and it does not bear the received stamp he indicates he

would ordinarily place on such a document. However, the Court finds that Plaintiffs did file the revised 1986 return: Mr. Holtvogt's testimony in this regard is corroborated by PX 7 which shows a disallowance of Plaintiffs' claim for 1986 refund on August 6, 1992, a date appropriate for responding to a refund claim made by amended or revised return in February, 1992.

■ However, the February, 1992, revised return is immaterial unless the $9,006 paid on April 15, 1987, is treated as a "deposit" rather than a payment of tax estimated to be due. This is so because 26 U.S.C. § 6511(b)(2)(A) limits the amount of any refund recoverable pursuant to a timely-filed claim to an amount not exceeding the amount of tax paid within the three-year period immediately preceding the filing of the claim plus the period of any extensions of time for filing the return. April 15, 1987, is manifestly more than three years and four months (the amount of the automatic extension) prior to February 5, 1992.

Not every remittance to the Internal Revenue Service is to be deemed a payment of taxes. In *Rosenman v. United States,* 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945), the Supreme Court found that $120,000 remitted to the Collector of Internal Revenue under cover of a letter reading in part "This payment is made under protest and duress, solely for the purpose of avoiding penalties and interest, since it is contended by the executors that not all of this sum is legally or lawfully due" was a deposit rather than a payment. Thus they held a refund suit filed within three years of application of part of the remittance to a deficiency was timely, even though well beyond three years after the $120,000 was remitted. A leading treatise summarizes *Rosenman* and its progeny as follows:

> This much is clear: (1) a remittance is not per se "payment" of the tax; (2) a remittance that does not satisfy an asserted tax liability should not be treated as the "payment" of a tax; and (3) an essential factor in "payment" before assessment is the sat-

5. Mr. Holtvogt tendered the original of Check # 906 to the Court at trial. It is attached to the marked copy of PX 3.

isfaction or discharge of what the taxpayer deems a liability.

10 Mertens, LAW OF FEDERAL INCOME TAXATION, ¶ 58.27 at 79 (1964 edition), quoted with approval in *Ameel v. United States*, 426 F.2d 1270, 1273 (6th Cir.1970).

Plaintiffs assert that their remittance of $9,006 with their Form 4868 on April 15, 1987, was not a payment of taxes, but a "deposit" and therefore comes within the *Rosenman* doctrine, making their August, 1994, suit timely because within two years of the denial in August, 1992, of their February, 1992, refund claim, made as part of their revised 1986 return.

The Government asserts that payments made with a Form 4868 are to be deemed payments of tax as a matter of law, relying on *Brockamp (Marian), Estate of McGill (Stanley B.) v. United States*, 859 F.Supp. 1283 (C.D.Cal.1994); *England v. United States*, 760 F.Supp. 186, 188 (D.Kan.1991); and *Batton v. United States*, 87–2 U.S.T.C. ¶ 9622, 1987 WL 43445, 1987 U.S.Dist. LEXIS 14155 (D.Md.1987). Defendant also cites *Weigand v. United States*, 760 F.2d 1072, 1074 (10th Cir.1985) (estimated income tax remittance submitted on April 15th with application for extension to file return was a payment within the meaning of I.R.C. § 6513(b)(2), not a deposit) and *Blatt v. United States*, 34 F.3d 252 (4th Cir.1994) (remittance of income tax that executor estimated was owed by estate on due date of return was a payment, not a deposit).

Plaintiffs in contrast rely on *Risman v. Commissioner of Internal Revenue*, 100 T.C. 191, 1993 WL 72856 (1993). There the Tax Court held that whether a particular remittance is to be treated as a payment or deposit "is generally to be established by all the facts and circumstances associated with the remittance," citing *Ewing v. United States*, 914 F.2d 499 (4th Cir.1990), and *Ameel, supra*. The Tax Court reached its conclusion by criticizing the logic of the *England* and *Batton* courts for relying on an analogy between payments of estimated tax and the remittance which is required to be paid with Form 4868.

In this Court's opinion, *Risman* was wrongly decided. While I agree that the analogy to payments of estimated tax is less than perfect, an analysis of the requirements of Form 4868 independent of that analogy supports the Government's position. Form 4868 permits a taxpayer a four-month extension of time to file a return, but not an extension of time to pay the tax. Treas.Reg. 1.6081–1(a) provides that extensions of time for filing individual income tax returns "... shall not operate to extend the time for the payment of the tax or any installment therefor unless specified to the contrary in the extension." Treas.Reg. § 1.6081–4(a)(4), which specifically deals with applications for automatic extensions of time currently sought by use of Form 4868, states that "... such application must be accompanied by the full remittance of the amount properly estimated as tax which is unpaid as of the date prescribed for the filing of the return." When the Plaintiffs filed their Form 4868 on April 15, 1987, for 1986, they were seeking, as is true of any taxpayer filing Form 4868, to extend the time to file their income tax return. In order to do so all taxpayers are required to estimate the amount of tax owed for that year and pay that amount with the application for extension. If they intend to do otherwise, the automatic extension granted to them is not valid under Treas.Reg. 1.6081–4(a)(4). There is no doubt that the tax for any particular year is due to be paid and the return of income filed by April 15th of the following year. The regulations permit an extension for filing the return conditioned on estimation and payment of the tax. If a taxpayer purports to make a deposit instead, he or she has not fulfilled the condition for the extension.

Accordingly, this Court holds that the amount required to be paid with the Form 4868 Application for Extension is a payment of tax owed, as a matter of law.

■ However, even if the Sixth Circuit Court of Appeals were to disagree and adopt the *Risman* test instead, Plaintiffs here would not be entitled to recover any of the $9,006 remittance of April 15, 1987, as a refund because the Court finds as a matter of fact, from all the circumstances, that this

particular remittance was a payment of tax instead of a deposit.

Plaintiff relies in the first instance on the memorandum notation "deposit for 86 tax" which appears on the check (PX 3). The use of the word "deposit" alone is certainly not conclusive as no regulations or case law make it "talismanic." Most of the cases where courts have found deposits rather than estimated payments have involved round figures ($120,000 in *Rosenman;* $25,000 in *Risman*), and it is certainly more likely that one would deposit a round amount than a precise figure like $9,006. Mr. Holtvogt offered no persuasive reason why that particular figure was chosen. His own practice was not consistent: in seeking a similar extension on April 15, 1986, for filing the 1985 return, he wrote a check for $3,500 with the notation "Estimate for 85 tax" and admits that it was a payment of tax estimated to be due. On April 14, 1988, he sent a check for $11,175.31 with a Form 4868 for the 1987 year. Although there was no testimony about the notation on this check, he admits it was in payment of estimated tax due. He admits that the instructions for Form 4868 require a taxpayer to estimate the tax due, but claims he did not do so in 1987, but instead "fantastically overestimated." He offered no explanation at all of why he followed the instructions in 1986 and 1988 and paid the estimated tax due (albeit in figures rounded to the hundred dollars one year and estimated to the penny in the other), but then did not follow the instructions in 1987, the year in between.

The Court finds as a matter of fact that Mr. Holtvogt's intention when he filed the Form 4868 on April 15, 1987, was to follow the instructions and that he did so by paying the tax estimated to be due in the amount of $9,006.[6] The Court notes that the payment was not accompanied by any words of protest or indication the payment was made to stop interest and penalties from running (compare *Rosenman*).

Plaintiffs assert that their claim the payment was a deposit is bolstered by the treatment it received by the IRS, particularly as evidenced by PX 4. In the latter exhibit, the IRS wrote to Plaintiffs on April 5, 1989, stating they wished to credit the $9,006 to Plaintiffs' account but could not do so because no return had yet been filed.[7] To the contrary, this letter clearly indicates the IRS was treating the payment as made on account of the 1986 tax year and explicitly called the remittance a "payment." Furthermore, the Service adequately proved that it has been its practice uniformly to treat remittances with Form 4868 as payments of tax estimated to be due for the prior year and there is no evidence it departed from standard practice here.

Accordingly, applying the *Risman* "all facts and circumstances" test hypothetically as if it were the law in this Circuit, Plaintiffs are still barred from recovering any portion of the $9,006 because it was a payment made more than three years and four months before February 5, 1992, and therefore outside the statute of limitations.

Applying this determination to the other facts with respect to 1986, the Court finds the Plaintiffs made pre-payments of tax in the total amount of $13,548.70 (federal income tax withheld of $4,543.70 plus the payment of $9,006.00 with the Form 4868). The Plaintiffs were properly assessed an estimated tax penalty of $237.14 for their failure to make quarterly estimated tax payments during 1986. Therefore the correct overpayment with respect to the 1986 tax return is $1,490.58 (payments of $13,548.70 less tax liability of $11,821.98 less estimated tax penalty of $237.14). Plaintiffs are entitled to a refund in that amount.

## ORDER FOR JUDGMENT

The Clerk will enter judgment dismissing Counts 1, 2, and 3 of the Complaint with prejudice. The Clerk will further enter

---

**6.** Plaintiffs' counsel suggested in oral argument on Defendant's Fed.R.Civ.P. 52(c) motion at the conclusion of Plaintiffs' case that Mr. Holtvogt's testimony about his intent was uncontroverted. However, the Court is not required to accept as true testimony about intent when its credibility is

undermined, as the Court has found, by very strong countervailing circumstantial evidence.

**7.** The return was eventually filed on May 1, 1990 (PX 5), although it was not accepted as filed until October because of missing schedules, etc.

judgment on Count 4 in favor of the Plaintiffs jointly and against the United States in the amount of $1,490.58. Since the parties have not briefed the issue of interest on the 1986 refund admittedly due, the parties are invited to submit a joint motion for amendment of judgment, within the time allowed by Fed. R.Civ.P. 59, to properly deal with the interest claim.[8] Plaintiffs' claim for costs and attorney fees is DENIED.

**8.** In the absence of agreement, Plaintiffs are of course free to file their own motion for amend-

ment of judgment in this regard.