George DAVID, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civil Action No. 96–30067–MAP.

United States District Court,
D. Massachusetts.

April 30, 1997.

9. In addition to the text in the factual background section, see footnote numbers three, five and eight.

Paul M. Stein, Malkasian, Hicinbothem & Mollica, PA, Framingham, for Plaintiff.

Carina J. Campobasso, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC, Susan M. Poswistilo, United States Attorney's Office, Boston, for Defendant.

PONSOR, District Judge.

Upon *de novo* review this Report and Recommendation are hereby adopted. Defendant's motion (Dkt. No. 8) is hereby ALLOWED, and plaintiff's motion (Dkt. No. 11) is DENIED. Plaintiff's suit cannot survive the letter and spirit of *Brockamp*.

So Ordered.

The clerk is hereby ordered to enter judgment for the defendant.

*REPORT AND RECOMMENDATION REGARDING CROSS–MOTIONS FOR SUMMARY JUDGMENT (Docket Nos. 8 and 11)*

NEIMAN, United States Magistrate Judge.

## I. *INTRODUCTION*

Plaintiff George David ("Plaintiff") claims that Defendant, the Internal Revenue Service of the United States of America ("IRS"), wrongfully refused to pay him a refund for tax year 1989. The parties' cross motions for summary judgment have been referred to this Court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the Court recommends that the IRS's motion for summary judgment be allowed, and that Plaintiff's motion for summary judgment be denied.

## II. *SUMMARY JUDGMENT STANDARD*

The role of summary judgment in civil litigation is to pierce the boilerplate of the pleadings and assay the parties' proof in an effort to determine whether trial is actually required. *McIntosh v. Antonino*, 71 F.3d 29, 33 (1st Cir.1995) (citing *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992)). Summary judgment is appropriate where the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

The Court must view the evidence as a whole, rather than in isolation. *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991). The facts, and all reasonable inferences that may be drawn from them, must be viewed in a light most favorable to the non-moving party, *see Guzman–Rivera v. Rivera–Cruz*, 29 F.3d 3, 4 (1st Cir.1994), who bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact, *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir.1994) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986)). Absent a genuine dispute of material fact, questions of law are appropriate for resolution on summary judgment. *Jimenez v. Peninsular & Oriental Steam Navigation Co.*, 974 F.2d 221, 223 (1st Cir.1992).

The mere fact that both parties move for summary judgment does not change the foregoing analysis. *United Paperworkers Intern. Union, Local 14, AFL–CIO–CLC v. International Paper Co.*, 64 F.3d 28, 32 n. 2 (1st Cir.1995). Barring special circumstances, the Court must consider each motion separately, drawing inferences against each movant in turn. *EEOC v. Steamship Clerks Union, Local 1066*, 48 F.3d 594, 608 n. 8 (1st Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 65, 133 L.Ed.2d 27 (1995).

## III. *FACTUAL BACKGROUND*

The facts are stated in a light most favorable to Plaintiff, the party initially opposing summary judgment. During tax year 1989, $5,599 was withheld from Plaintiff's pay and remitted to the IRS for federal income tax purposes. On April 4, 1990, federal agents, acting pursuant to a search warrant, seized many of Plaintiff's business records including relevant tax documents. Unable to complete

his 1989 return on time without the documents, Plaintiff, on April 15, 1990, filed an IRS Form 4868 requesting an extension. Included with this request was Plaintiff's check for $12,000. On July 15, 1990, Plaintiff requested and received a second extension, which expired on October 1 5, 1 990. Plaintiff did not file his 1989 tax return within the extended period.

On February 21, 1992, after a series of motions filed by Plaintiff, the IRS released Plaintiff's documents in accord with a settlement reached between him, his employer and the IRS. Plaintiff claims, however, that he did not actually receive custody of the documents until December 31, 1992, after a number of months of wrangling with his employer.

In the interim, in October of 1992, Plaintiff pleaded guilty to two federal criminal counts: conspiracy to defraud (arising out of Plaintiff's purchase of annuities for an insurance client) and income tax evasion (arising out of Plaintiff's failure to a file a Form 1099 for an employee). In December, Chief Judge Frank H. Freedman sentenced Plaintiff to one year incarceration with three years of supervised release.

Plaintiff reported to the Allenwood federal detention center on January 8, 1993. Upon his release on October 4, 1993, Plaintiff went immediately to a halfway house in Lawrence, Massachusetts, where he resided until approximately January 5, 1 994. At the halfway house, Plaintiff's travel was restricted to and from his work-release job.

Immediately upon his release from the halfway house, Plaintiff began reviewing his tax records with the purpose of filing his 1989 return. Plaintiff completed his return on or about February 18, 1994, and the return was received by the IRS on February 24, 1994. The return claimed a refund of $11,251. This amount represents the difference between $17,599 (the $12,000 remittance of April 1 5, 1990, plus the $5,599 in payroll deductions during calendar year 1 989) and a tax liability of $6,348. On or about May 16, 1994, the IRS determined that Plaintiff's tax liability for calendar year 1989 was in fact $6,348. However, the IRS refused to grant the refund because of applicable statutory time limits.

## IV. PROCEDURAL BACKGROUND

On April 23, 1996, Plaintiff, acting *pro se*, filed the instant complaint, alleging that the IRS wrongfully refused to pay him a refund for tax year 1 989. The complaint demands judgment in the amount of $11,251 plus interest and costs. On December 19, 1996, after discovery was completed, the IRS moved for summary judgment. On January 6, 1997, Plaintiff filed his own motion for summary judgment, together with a lengthy statement of facts, a supporting affidavit and other documentation.

On January 31, 1997, the IRS filed an opposition to Plaintiff's summary judgment motion and three days later, on February 3, Plaintiff's present counsel filed an appearance on Plaintiff's behalf. On that same date, Plaintiff, through counsel, filed an opposition to the IRS's motion for summary judgment.[1]

---

1. On the same day Plaintiff filed his motion for summary judgment, January 6, 1997, he moved to amend his complaint in order to allege that the $12,000 paid to the IRS on April 15, 1990, with a request for an extension, "was a *deposit* of monies of the plaintiff in excess of any tax liability he may have had." (Docket No. 10) (emphasis added). The IRS opposed the motion, arguing that allowing the amendment would open the door to a host of new discovery. (Docket No. 14.) On January 22, 1997, this Court denied Plaintiff's motion to amend, adding the following margin endorsement: "Plaintiff has failed to provide any reason why leave to amend should be allowed. He has not addressed the delay in seeking an amendment, why the complaint needs to be amended in order to pursue his motion for summary judgment or the prejudice to defendant entailed by the delay." (*See* Docket No. 10.)

On February 5, 1997, Plaintiff, now represented by counsel, filed a motion to clarify or reconsider the margin order. (Docket No. 19.) Rather than responding to the motion, the IRS filed a supplement to its opposition to Plaintiff's motion for summary judgment. "If the Court does grant the plaintiff's latest motion," the I.R.S. added, "the United States would ask that it rule on the parties' cross motions for summary judgment and that, if it denies the United States' motion for summary judgment on the grounds that not all remittances with applications for extension of time to file are payments as a matter of law, it permit the United States to depose the plaintiff on this [deposit] issue." (Docket No. 20 at 1 n.

## V. *DISCUSSION*

There are essentially two issues raised in the parties' motions: (1) whether Plaintiff's remittance of $12,000 in April of 1 990 constituted a "deposit," rather than a "payment" of tax, so that certain statutory bars to recovery do not apply, and (2), if the remittance was not a "deposit," whether Plaintiff is nonetheless entitled to equitable relief from the statutory bars.

### A. *STATUTORY BACKGROUND*

Plaintiff's case is brought pursuant to 26 U.S.C. § 7422 which provides, in pertinent part, that no suit for a tax refund may be maintained unless "a claim for refund or credit has been duly filed with the Secretary [of the IRS], according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." 26 U.S.C. § 7422(a). A claim for a refund must be filed "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." 26 U.S.C. § 6511(a). The First Circuit has assumed that a late return is a "return" within the meaning of section 6511(a). *Oropallo v. United States*, 994 F.2d 25, 27 (1st Cir.1993). As a result, the First Circuit has also assumed that a claim for a refund filed contemporaneously with a late return "would obviously have been filed within three years of the filing of the return and so [i]s timely" under section 6511(a). *Id.* (citing 26 C.F.R. § 301.6402-3(a) (a return which claims a refund may be considered a "claim for refund" under section 6511(a))).

Although Plaintiff filed his 1989 return quite late, in February of 1994, by contemporaneously seeking a refund he was well within the three year limitations period prescribed by section 6511(a). Accordingly, like the taxpayer in *Oropallo*, Plaintiff's claim for a refund was timely under section 6511(a).

Because of other statutory provisions, however- er, the timeliness of his refund request did not automatically get Plaintiff the refund he sought. Thus, although the IRS cites the time limits expressed in section 6511(a), it actually relies on another cited statutory bar—the cap on recovery found in section 6511(b)(2)(A).

Section 6511(b)(2)(A) provides, with respect to a claim timely filed during the three year period in section 6511(a), that the amount of the refund is limited to "the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." 26 U.S.C. § 6511(b)(2)(A). Since Plaintiff filed his claim on February 24, 1994, he may only recover taxes paid in the preceding three years and six months, the six months representing the time of his extensions. Thus, Plaintiff's recovery would be limited to any taxes "paid" on or after August 24, 1990. Under 26 U.S.C. § 6513(b)(1), the IRS asserts, Plaintiff's 1989 taxes were deemed paid on April 1 5, 1990, more than four months prior to the cut-off date of August 24, 1 990. Accordingly, the IRS argues, under the plain language of section 6511(b)(2)(A), Plaintiff may not recover any portion of those taxes. This brings the Court to Plaintiff's arguments.

### B. *DEPOSIT-PAYMENT ISSUE*

■ Plaintiff first attempts to escape the strictures of section 6511(b)(2)(A) by arguing that the $12,000 he remitted on April 4, 1990 was not a payment of tax, but a "deposit."[2] Plaintiff argues that "the better reasoned weight of authority follows the United States Tax Court position [in *Risman v. Comm'r*, 100 T.C. 191 [1993 WL 72856] (1993),] . . . that a remittance . . . made . . . without reference to any specific assessment, audit or

---

1.) On February 21, 1997, this Court allowed Plaintiff's motion to clarify or reconsider with the following margin endorsement: "Plaintiff is not precluded from opposing the United States' motion for summary judgment or in supporting his own motion for summary judgment on the basis of both theories he espouses. Both parties, in fact, have addressed the 'deposit' theory. See Docket Nos. 17 and 20. Per the request of the United States, further discovery shall be considered once summary judgment is addressed by the Court." (*See* Docket No. 19.)

**2.** Plaintiff does not appear to contest the IRS's assertion that the $5,590 withheld from his wages during calendar year 1989 was deemed "paid" on April 15, 1990. *See* 26 U.S.C. § 6513(b)(1); *see also* § 301.6513-1(b).

probable liability is more aptly considered a 'deposit' than a payment of tax." (Pl.'s Mot. at 2.) Plaintiff's deposit theory derives from *Rosenman v. United States*, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945).

In *Rosenman*, the Supreme Court was faced with the question of whether estate taxes had been "paid" when remitted by the taxpayer or when later assessed by the IRS. After receiving an extension of time, the plaintiffs submitted $120,000 to the IRS with the following cover letter: "This payment is made under protest and duress, solely for the purpose of avoiding penalties and interest, since it is contended by the executors that not all of this sum is legally or lawfully due." The court held that, given the plaintiffs' letter, the $120,000 remittance was a deposit and not a payment and, as a result, the refund was not subject to the statutory three year limitations period. *See Id.*, 323 U.S. at 662–63, 65 S.Ct. at 538–39.

*Following Rosenman*, several courts went so far as to imply that, as a general rule, remittances made before a tax is formally assessed are, by definition, deposits. *See, e.g., United States v. Dubuque Packing Co.*, 233 F.2d 453, 460–61 (8th Cir.1956); *Thomas v. Merchantile Natl. Bank*, 204 F.2d 943, 944 (5th Cir.1953); *see also Plankinton v. United States*, 267 F.2d 278, 280 (7th Cir.1959) (generally, remittances prior to the time liability is defined are not payments). It is this line of cases on which Plaintiff relies, even though at least one of the decisions, the Fifth Circuit's opinion in *Thomas*, has been questioned by other panels in the same circuit. *See, e.g., Ford v. United States*, 618 F.2d 357, 359–60 (5th Cir.1980) (following *Thomas* as precedential, but implying that it should be overruled; also criticizing *Dubuque Packing*); *Harden v. United States*, No. 95–40046, 74 F.3d 1237 (5th Cir.1995) (unpublished) (although the IRS "makes a rational and forceful argument for the proposition that remittances in conjunction with obtaining an extension of time are in fact estimates of tax and should be treated as such[,][t]his

panel ... is bound to the decisions of this court in *Thomas* and *Ford* ").[3]

Running counter to these opinions is a host of more recent cases, including two from this district. These decisions uniformly hold that, in most circumstances, a remittance can be deemed to be a payment, not a deposit, as a matter of law. *See, e.g., Gabelman v. Comm'r*, 86 F.3d 609, 611–12 (6th Cir.1996); *Blatt v. United States*, 34 F.3d 252, 256–57 (4th Cir.1994); *Ewing v. United States*, 914 F.2d 499, 503 (4th Cir.1990); *Weigand v. United States*, 760 F.2d 1072, 1074 (10th Cir.1985); *Lorusso v. United States*, No. 94–11713–NG, 1996 WL 512319, at *4 (D.Mass. June 25, 1996) (unpublished); *Nunziato v. United States*, No. 95–30205–FHF, 1996 WL 437538, at *3 (D.Mass. May 7, 1996); *Holtvogt v. United States*, 887 F.Supp. 994, 999 (S.D.Ohio 1995); *England v. United States*, 760 F.Supp. 186, 188 (D.Kan.1991); *Batton v. United States*, No. HM86–297, 1987 WL 43445, at *1 (D.Md. Oct. 23, 1987) (unpublished). Several of these opinions specifically reject the analyses of the earlier cases. *See, e.g., Ewing*, 914 F.2d at 505 (distinguishing *Thomas* and *Dubuque Packing* and holding that, "the rule that tax liability is not premised on a per se requirement of previous assessment is the better reasoned one and represents the clear weight of authority"); *Lorusso*, 1996 WL 512319, at *3 n. 4 (*Thomas* and *Dubuque Packing's* "very thin ... line of cases ... read too much into *Rosenman's* holding"); *Batton*, 1987 WL 43445, at *1 "([t]he clear language of 26 U.S.C. § 6513(b) has superseded *Rosenman* "). The First Circuit has not addressed the question.

Notwithstanding, Plaintiff argues that the deposit-payment issue is "fact-driven" so that, at the very least, factual disputes present here preclude summary judgment. (Pl.'s Opp'n to Def.'s Mot. (Docket No. 17) at 7–8.) Indeed, the Fourth Circuit opinion in *Blatt* indicates that the question of whether a remittance is a payment or a deposit may be "one of intent" to be determined by individu-

---

**3.** Plaintiff also cites a Sixth Circuit case, *Ameel v. United States*, 426 F.2d 1270, 1273 (6th Cir. 1970), which summarized *Rosenman* and its progeny. *Ameel*, however, specifically disagreed with *Thomas* and *Dubuque* and concluded that

*Rosenman* does not foreclose the possibility that a remittance made prior to assessment can be a payment of tax. *See id. See also Fortugno v. Comm'r*, 353 F.2d 429 (3d Cir.1965).

al circumstances, e.g., "when the tax liability was created, the taxpayer's purpose in remitting the money, . . . how the IRS treated the payment[,] . . . [and] the way [the taxpayer] phrases his request for a return of part of the remittance." *Blatt*, 34 F.3d at 255. Plaintiff's reliance on a case-by-case analysis, however, is not warranted.

That there may be individual circumstances surrounding a particular case does not thereby mandate a trial. *Blatt*, for example, was decided at summary judgment. In fact, the circumstances here are less favorable than those present in *Blatt*. There, the taxpayer sent payments to the IRS but never filed an extension request, necessitating at least some inquiry as to his intent. Here, in contrast, Plaintiff sent his payment to the IRS together with a Form 4868 request for an extension of time. That request makes all the difference, for it clarifies by itself the intent with which the accompanying payment was made. Indeed, as *Blatt* itself points out, "[a]ny extension of time obtained for filing the return does not extend the time for payment of the tax due." *Id.* at 256 (citing regulations). "It follows," the court continued, "that the amount shown on a return or, if no return is then filed, the amount estimated to be due is payable at the time fixed for filing a return, and that a payment of that amount, whether precisely calculated or not, is in either case the payment of tax." *Id.* at 256–57.

This is essentially the holding in a number of other cases which found, as a matter of law, that a remittance filed contemporaneously with a request for an extension is a payment, not a deposit, particularly when the remittance is not accompanied by any words of protest. *See, e.g., Gabelman,* 86 F.3d at 611–12; *Weigand,* 760 F.2d at 1073–74; *Lorusso,* 1996 WL 512319, at *3. *Nunziato,* 1996 WL 437538, at *2–3; *England,* 760 F.Supp. at 187–88; *Batton,* 1987 WL 43445, at *3. This conclusion derives from IRS regulations in effect at all relevant times which require that applications for extensions

"must show the full amount properly estimated as tax for such taxpayer for such taxable year, and such application must be accompanied by the full remittance of the amount properly estimated as tax which is *unpaid* as of the date prescribed for the filing of the return." 26 C.F.R. § 1.6081–4(a)(4) (1990) (emphasis added). *See also* 26 C.F.R. § 1.6081–4(b) ("any automatic extension of time for filing an individual income tax return granted under paragraph (a) of this section shall not operate to extend the time for *payment* of any tax due on such return") (emphasis added).[4]

In this Court's opinion, these latter decisions are analytically correct. As applied to the facts of this case, viewed in a light most favorable to Plaintiff, the Court sees no reason why it cannot find, as a matter of law, that Plaintiff's remittance of $12,000 on April 4, 1990 was anything other than a payment of tax. Plaintiff made that payment along with a request for an extension, he included no words of protest, and it was only in discovery that he claimed that the payment was a "deposit." *Compare Cohen v. United States,* 995 F.2d 205, 209 (Fed.Cir.1993) ("Taxpayers adopted a clear position [that remittance was a deposit] at every stage and acted consistently.") It makes no difference that Plaintiff now contends that the remittance was only a deposit. *See, e.g., Lorusso,* 1996 WL 512319, at *3; *England,* 760 F.Supp. at 188. *See also Holtvogt,* 887 F.Supp. at 1000 ("The use of the word 'deposit' alone is certainly not conclusive as no regulations or case law make it 'talismanic'."); *Ehle v. United States,* 720 F.2d 1096, 1097 (9th Cir.1983) ("That [the taxpayer] may have intended the amounts withheld to be a deposit rather than a payment is irrelevant under the terms of section 6513(b)."). In short, allowing Plaintiff, or any other taxpayer, to redesignate a payment of anticipated tax paid in conjunction with Form 4868 as a deposit would introduce a substantial amount of uncertainty into the administration of the tax laws. Taken to its logical conclusion, it would effectively elimi-

---

4. As utilized for tax year 1989, Form 4868 underscores the conclusion that an accompanying remittance is a tax payment. The form emphasizes in bold that "[t]his **is not an extension to pay your tax**" and directs the taxpayer to "pay any amount(s) you owe" when filing the form. In addition, the form requires the taxpayer, after calculating his expected tax liability for 1989, to pay that amount in full in order to get the extension. (*See* Docket No. 23.)

nate all applicable statutory time limits. At bottom, there is nothing in the present matter which convinces the Court that more facts are needed, *see* n. 1 *supra*, or that material or genuine issues of facts exist which would preclude summary judgment.[5]

One final note on the deposit-payment issue: Plaintiff cites a tax court opinion, *Risman v. Comm'r*, 100 T.C. 191, 1993 WL 72856 (1993), which held that an extension request does not necessarily transform a remittance filed contemporaneously therewith into a payment of tax. Plaintiff also cites a single district court opinion, *Crosby v. United States*, 889 F.Supp. 148 (D.Vt.1995), which relies, in part, on *Risman*. *Risman*, however, as well as *Rosenman* and *Ameel*, concerned a taxpayer involved in an audit who was awaiting a definite determination of tax liability by the Government. Here, in contrast, Plaintiff filed a Form 4868 extension request and paid a self-assessed tax. As the Sixth Circuit noted in *Gabelman*, this is in sharp contrast to "situations where the IRS is challenging determinations and representations made by taxpayers," in which case "a taxpayer may very well submit a remittance merely to stop any penalties from accumulating." *Id.*, 86 F.3d at 613. In any case, *Risman* has been explicitly rejected by several courts, *see, e.g., Gabelman*, 86 F.3d at 612; *Holtvogt*, 887 F.Supp. at 999; *Nunziato*, 1996 WL 437538, at *2, and this Court believes that the better analysis is the *Gabelman* family of cases.

## C. *EQUITABLE RELIEF*

■ Plaintiff's second line of attack—which *per force* assumes the $12,000 remittance to have been a payment and not a deposit—is that he is entitled to equitable relief from the strict requirements of section

6511(b)(2)(A). As he acknowledged at oral argument, however, this is a difficult claim to make in light of the Supreme Court's recent decision in *United States v. Brockamp*, —— U.S. ——, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997), particularly with regard to his claim for equitable tolling.

The *Brockamp* plaintiffs claimed that their disabilities, alcoholism and senility, should permit equitable tolling of the same time limits at play here. In his unanimous decision for the court, however, Justice Breyer determined that courts cannot toll, for non-statutory equitable reasons, the statutory time limits for filing tax refund claims set forth in section 6511. *Id.*, —— U.S. at ——, 117 S.Ct. at 850. *See also Oropallo*, 994 F.2d at 31 (First Circuit panel, including then Judge Breyer, reaching virtually the same conclusion). Central to this conclusion was the language of section 6511 itself—a provision which "sets forth its limitations in a highly detailed technical manner, that linguistically speaking, cannot easily be read as containing implicit exceptions"—and a recognition that, to find otherwise, "would work a kind of linguistic havoc." *Id.* at —— – ——, 117 S.Ct. at 851–52.[6]

Certainly, there are some novel features to Plaintiff's case not quite reflected in either *Brockamp* or previous decisions addressing the same issue. Accordingly, the Court addresses the specific arguments made by Plaintiff in some detail.

First, unlike the *Brockamp*-type cases, Plaintiff claims that his failure to file his 1989 tax return in a more timely manner, so as to place it within three and one-half years of his April 15, 1990 payment, is attributable to the IRS itself. In particular, Plaintiff claims that he was unable to file his returns once his

---

5. Plaintiff's reliance on Rev. Proc. 84–58, 1984–33 I.R.B. 9, is also misplaced, since it concerns "deposits" made in anticipation of or in response to liabilities proposed by the I.R.S. The procedure directs taxpayers to make remittances to terminate the accrual of interest in the liability expected to be asserted. Such deposits are akin to a cash bond; they are subject to immediate return on demand until the I.R.S. is entitled to make an assessment or until a revenue agent's report is issued regarding the liability. Here, in contrast, Plaintiff's payment was made in conjunction with a request for an extension of time to file a tax return.

6. The Court notes that the district court in *Brockamp*, which originally found that equitable tolling did not apply, also rejected the taxpayer's claim that the remittance was a deposit rather than a payment. *Brockamp v. United States*, 859 F.Supp. 1283, 1286–87 (C.D.Cal.1994). This latter issue was not addressed by either the Ninth Circuit or the Supreme Court. *See Brockamp v. United States*, 67 F.3d 260 (9th Cir.1995).

records were seized by the IRS on April 4, 1990. Those records were retained by the IRS until February 21, 1992, Plaintiff claims, when then Magistrate Judge Michael A. Ponsor ordered their release in accord with an agreement between Plaintiff, Plaintiff's employer and the IRS. His receipt of the documents was further delayed until December 31, 1992, Plaintiff claims, because of a dispute he had with his employer. Moreover, Plaintiff avers that, due to prison rules, he was unable to access his files during his imprisonment from January 8, 1993 to October 4, 1993, and then again from October 4, 1993 to January 5, 1994, while in a halfway house.

The Government counters by arguing that Plaintiff could have filed an accurate return prior to April 4, 1990, that he could have had access to his seized papers at any time while they were in the possession of the IRS, that, in any case, the papers were released on February 21, 1992, and that any further delay in their receipt until December 31, 1992, had nothing to do with the IRS, but rather Plaintiff's employer. Finally, the Government asserts that Plaintiff's imprisonment and stay at a halfway house did not preclude his filing a timely return.

Whatever factual disputes may lurk in these waters, they are not material. Even accepting the facts as described by Plaintiff, the barriers raised by the Supreme Court's opinion in *Brockamp* are insurmountable. While Plaintiff tries to attribute his inability to file his tax returns in a timely manner to the IRS, rather than himself, surely the taxpayer in *Brockamp* was as "disabled" as Plaintiff, if not more so, from filing his return. Moreover, there was at least some time within which Plaintiff could have accomplished his task.

Second, Plaintiff makes several sympathetic appeals which—however worthy—are unfortunately unavailing. As *Brockamp* itself acknowledged, although there might be some sympathy for taxpayers who have missed their filing deadlines, "[t]he nature and potential magnitude of the administrative problem [were the Court to hold otherwise] suggest that Congress decided to pay the price of occasional unfairness in individual cases (penalizing a taxpayer whose claim is una-

voidably delayed) in order to maintain a more workable tax enforcement system." *Id.* at ——, 117 S.Ct. at 852. *See also Blatt*, 34 F.3d at 257 (although ruling that a refund claim is filed too late may be "harsh," the court is "not authorized to provide relief from the clear statutory requirements"); *Lorusso*, 1996 WL 512319, at *4 (indicating that court's result might appear "harsh"); *Nunziato*, 1996 WL 437538, at *3 ("While [the taxpayer] might think the Court unjust in relying upon a 'technicality' to stifle his current attempt to recapture these monies, it must be remembered that the efficient functioning of our system of taxation depends, for the most part, on voluntary compliance with the tax laws by all citizens.").

Plaintiff may well have had some room to argue were the First Circuit's opinion in *Oropallo* the only controlling precedent, to the degree it acknowledged that there may be " 'rare exceptions' to the 'rigid prevailing rule( ) that ... statutes of limitations cannot be extended in any circumstances,' *e.g.*, the prisoner of war or fraud situation." *Id.*, 994 F.2d at 28 (quoting *Stepka v. United States*, 196 F.Supp. 184, 185 (E.D.N.Y.1961)). But whatever equitable tolling argument may have survived *Oropallo* was doomed by *Brockamp*. Indeed, even Mr. Oropallo's incarceration did not appear to justify a delay in filing his return. *Id.* at 28 n. 2.

Third, Plaintiff, through an imaginative melding of statute and equity, seeks the Court's indulgence to undo any asserted unfairness. To the extent the Court understands Plaintiff's position, he first argues that the Court should consider whatever payment he made on April 15, 1990 to have actually been made on October 15, 1990, since 26 U.S.C. § 6161 allows a delayed tax payment in certain situations. Alternatively, Plaintiff argues that the IRS no longer requires that payments be made together with Form 4868 in order to obtain an extension.

Whatever practical effect these arguments might have on the applicable dates and statutory time limits, the alchemy does not work. The fact is that Plaintiff made his payment on April 15, 1990, with a Form 4868 then in effect. *United States v. Williams*, 514 U.S. 527, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995)

 

(permitting a taxpayer to sue for a refund from taxes she paid under protest on behalf of her ex-husband), upon which Plaintiff also relies, is inapposite. Simply put, the Court does not believe it appropriate to trifle with the clear message of the Supreme Court in *Brockamp* that equitable principles ought not be read into the internal revenue statutes at issue here.

■ Finally, Plaintiff argues that his payment should be returned under the principles of "equitable recoupment," which Plaintiff claims is a doctrine distinct from "equitable tolling." *See Bull v. United States,* 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). Plaintiff's reliance has no application to the circumstances of this case. The taxpayer in *Bull* sought to offset an overpayment due to *wrongfully* collected tax against a properly asserted deficiency. As the Supreme Court stated in *Bull,* "[i]f that which the sovereign retains was unjustly taken in violation of its own statute, the withholding is wrong." *Id.,* 295 U.S. at 260, 55 S.Ct. at 700. In contrast, Plaintiff merely seeks to recover a refund for which he did not make a claim within the statutorily prescribed time. The IRS has violated no statute. Indeed, the IRS's retention of Plaintiff's payment was mandated by Section 6511(b)(2). *See United States v. Dalm,* 494 U.S. 596, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990).

## VI. *CONCLUSION*

After viewing the facts in a light most favorable to Plaintiff, the Court concludes that the IRS is entitled to judgment as a matter of law. Accordingly, the Court recommends that the IRS's motion for summary

judgment be ALLOWED and that Plaintiff's motion for summary judgment be DENIED.[7]

DATED: April 11, 1997

---

7. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of

Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Park Motor Mart v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.