ROBERT B. RISMAN AND ELEANOR RISMAN, PETITIONERS
*v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 11429-91.          Filed March 16, 1993.

Robert B. Risman and Eleanor Risman, pro sese.
*Marvis A. Knospe,* for respondent.

---

[7] Recall that those two properties were of approximately equal value at that time.

SWIFT, *Judge:* Respondent determined deficiencies in petitioners' joint Federal income taxes and additions to tax as follows:

| | | *Additions to tax* | | | |
|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6654(a) |
| 1981 | $211,291 | $49,894 | $10,629 | [1] | - - - |
| 1982 | 222,519 | 55,630 | 11,126 | [1] | $21,620 |
| 1983 | 162,924 | 40,731 | 8,146 | [1] | 9,942 |
| 1984 | 611,202 | 152,801 | 30,560 | [1] | 38,393 |
| 1985 | 387,695 | 88,174 | 19,385 | [1] | 22,216 |

[1]50 percent of the interest due on the portion of the underpayment attributable to negligence.

After various concessions, the sole issue remaining for decision is the point in time at which a $25,000 remittance that petitioners made to respondent on April 15, 1982, is to be treated as a "payment" of taxes. If petitioners' $25,000 remittance is treated as a payment of taxes when remitted to respondent on April 15, 1982, a refund of any portion thereof would be barred under the statute of limitations of section 6511, and we would lack jurisdiction under section 6512(b) to grant any refund to petitioners.[1] On the other hand, if petitioners' $25,000 remittance is treated as a mere deposit of funds when remitted to respondent on April 15, 1982, such deposit will not be treated as a payment of taxes until June 7, 1989, the date petitioners filed their 1981 joint Federal income tax return, and a refund thereof under the statute of limitations of section 6511 would not be barred, and we would not lack jurisdiction to grant a refund to petitioners under section 6512(b).

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioners resided in Medford, Massachusetts, at the time their petition was filed.

During 1981 through 1985, petitioner Robert B. Risman (petitioner) was an independent real estate broker and an

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1981, and all Rule references are to the Tax Court Rules of Practice and Procedure.

insurance agent. Petitioner also purchased, managed, and sold residential real estate for his own account.

In April of 1982, petitioners' personal lives and their personal and business records were in a state of disarray and turmoil. Among other things, petitioner had recently changed his place of business, and petitioner's office manager and bookkeeper for over 25 years was terminally ill with cancer. Petitioner's office manager and bookkeeper died in May of 1982.

On April 15, 1982, petitioners timely filed with respondent a Form 4868, Application for Automatic Extension of Time (Form 4868) to file their 1981 joint Federal income tax return. Petitioners enclosed in the envelope that they mailed to respondent with the Form 4868 a $25,000 remittance. At trial, respondent was not able to produce the original Form 4868 that petitioners had mailed to respondent, and neither party was able to produce a copy thereof.

At the time of mailing the $25,000 remittance to respondent, petitioners had no idea what the amount of their 1981 joint Federal income tax liability would be, and the amount of the remittance was arbitrarily determined by petitioner and remitted to respondent so that petitioners would not have to pay penalties and interest when they finally were able to determine their 1981 joint Federal income tax liability and to file their 1981 tax return.

In April of 1982, upon receipt from petitioners of the Form 4868 and of the $25,000 remittance, respondent did not credit petitioners' $25,000 remittance against any tax liability of petitioners, nor did respondent assess any tax liability against petitioners. Rather, respondent credited petitioners' $25,000 remittance to a non-interest-bearing suspense account in petitioners' names.

Respondent granted petitioners' request for an extension of time until June 15, 1982, to file petitioners' 1981 joint Federal income tax return. As of June 15, 1982, however, petitioners had not filed a 1981 Federal income tax return, and petitioners did not request any further extensions of time to file their 1981 return.

In a letter dated June 27, 1983, petitioner indicated to respondent that the April 15, 1982, $25,000 remittance was not based on any estimate of petitioners' 1981 Federal income tax liability and that petitioner expected that the

remittance would be applied "to future taxes owed on the returns I owe".

Between April 15, 1983, and April 15, 1985, petitioners filed Form 4868 extension requests with regard to the filing of their joint Federal income tax returns for 1982, 1983, and 1984, each of which respondent granted. Petitioners did not submit to respondent any remittances along with these Form 4868 extension requests for 1982, 1983, and 1984.

On April 25, 1985, respondent credited the $25,000 remittance that petitioners had made to respondent on April 15, 1982, to another suspense account (namely, to an "excess collection account") in petitioners' names.

On May 6, 1986, petitioners filed a Form 4868 extension request for 1985. Petitioners submitted a $10,000 remittance along with the Form 4868 for 1985, on which form petitioners added the following comment: "I realize this is late. Even if extension is not granted please keep the [$10,000 remittance] as deposit toward tax due."

On February 4, 1988, August 8, 1988, August 9, 1988, and December 13, 1989, petitioners submitted to respondent four additional remittances in the respective amounts of $15,000, $10,000, $15,000, and $30,000. Petitioners did not submit these remittances to respondent with any income tax returns, nor with any Form 4868 extension requests, and none of the remittances were designated for the satisfaction or payment of any particular tax liability. The February 4, 1988, $15,000 remittance was submitted by petitioners along with a notation specifying only that respondent "apply this $15,000 to my account".

As indicated previously, on June 7, 1989, petitioners filed with respondent their 1981 joint Federal income tax return on which petitioners reported a 1981 joint Federal income tax liability of $1,283, and petitioners claimed thereon an overpayment of $23,717—the April 15, 1982, $25,000 remittance less the $1,283 total tax liability reported on the return.

In June of 1989, upon receipt of petitioners' 1981 joint Federal income tax return, respondent assessed against petitioners for 1981 the $1,283 tax liability reported on the return, and respondent applied or credited $1,283 of petitioners' April 15, 1982, $25,000 remittance in payment of that $1,283 tax liability.

After an audit, respondent, on March 11, 1991, mailed to petitioners a notice of deficiency for each of the years 1981 through 1985, reflecting the following tax deficiencies:

| Year | Amount |
|---|---|
| 1981 | $211,291 |
| 1982 | 222,519 |
| 1983 | 162,924 |
| 1984 | 611,202 |
| 1985 | 387,695 |
| Total | 1,595,631 |

On June 7, 1991, petitioners timely filed their petition in this case protesting in its entirety the above notice of deficiency.

After concessions, petitioners and respondent now agree that petitioners' joint Federal income tax liabilities for each of the years 1981 through 1985 (before taking into account certain agreed net operating loss carrybacks) are as follows:

| Year | Amount |
|---|---|
| 1981 | $1,006 |
| 1982 | 11,071 |
| 1983 | 20,116 |
| 1984 | 6,078 |
| 1985 | 5,225 |
| Total | 43,496 |

After taking into account the agreed net operating loss carrybacks, petitioners and respondent agree that petitioners' total joint Federal income tax liabilities for the years 1981 through 1985 are as follows:

| Year | Amount |
|---|---|
| 1981 | $1,006 |
| 1982 | 1,323 |
| 1983 | 3,838 |
| 1984 | 6,078 |
| 1985 | 5,225 |
| Total | 17,470 |

The following is a summary of the remittances petitioners made to respondent from April of 1982 through December of 1989:

| Date | Amount |
| --- | --- |
| Apr. 15, 1982 | $25,000 |
| May 6, 1986 | 10,000 |
| Feb. 4, 1988 | 15,000 |
| Aug. 8, 1988 | 10,000 |
| Aug. 9, 1988 | 15,000 |
| Dec. 13, 1989 | 30,000 |
| Total | 105,000 |

With regard to the above remittances (with the exception of petitioners' April 15, 1982, $25,000 remittance), respondent: (1) Treated each remittance as a deposit at the time each remittance was made; (2) has agreed to apply each remittance in payment of petitioners' joint Federal income tax liabilities for 1982, 1983, 1984, and 1985; and (3) has agreed to refund to petitioners the balance of the remittances not applied to petitioners' tax liabilities.

As indicated, contrary to respondent's treatment of petitioners' other remittances, respondent treats petitioners' April 15, 1982, $25,000 remittance as a payment of tax by petitioners as of April 15, 1982, not as a deposit. Respondent therefore regards a refund of any portion of that remittance as barred by the statute of limitations on refunds under section 6511, and respondent asserts that we lack jurisdiction under section 6512(b) to grant petitioners any refund.

## OPINION

For the purpose of analyzing issues arising under the statute of limitations of section 6511, under the jurisdictional requirements of section 6512(b)(3), and under the statutory provisions for the accrual of interest of section 6611, the courts use different tests for determining whether remittances by taxpayers should be regarded as payments of tax or as mere deposits. We do not attempt in this opinion to reconcile those differences.[2]

[2] The different factors used by the courts for this purpose are reviewed in *Ewing v. United States*, 914 F.2d 499, 503-504 (4th Cir. 1990); *Fortugno v. Commissioner*, 353 F.2d 429, 434-435 (3d Cir. 1965), affg. 41 T.C. 316 (1963); and *Wiltgen v. United States*, 813 F. Supp. 1387, 1391-1393 (N.D. Iowa 1992). See also Saltzman, IRS Practice and Procedure, par. 11.05[1][b], at 11-

We only address, and we only decide in this case, the one argument made by respondent to support respondent's treatment of petitioners' $25,000 remittance as a payment of tax as of April 15, 1982. By way of brief introduction, however, to our resolution of respondent's one argument, we offer the following general comments.

In analyzing issues involving the statutes of limitation, the courts generally have recognized that the tax laws are technical, and the statutes of limitation generally are to be interpreted accordingly. *Ewing v. United States*, 914 F.2d 499, 501 (4th Cir. 1990).

A remittance by a taxpayer to respondent generally will not be regarded as a payment of Federal income tax until the taxpayer intends that the remittance satisfy what the taxpayer regards as an existing tax liability. See *Rosenman v. United States*, 323 U.S. 658, 661-662 (1945); *Ewing v. United States, supra* at 503-504; *Fortugno v. Commissioner*, 353 F.2d 429, 435 (3d Cir. 1965), affg. 41 T.C. 316, 322 (1963); see also *Perkins v. Commissioner*, 92 T.C. 749, 754-759 (1989). Until such time and absent such intent, a remittance by a taxpayer to respondent generally will be regarded, not as a payment of tax, but merely as a deposit in the nature of a cash bond with respect to a tax liability that is to be determined at a later point in time.

As stated in *Ewing v. United States, supra* at 504—

a *payment* results from the remittance by a taxpayer concomitant with the recognition of a tax obligation whether by filing with a return, resolution of a dispute by an agreement * * * or otherwise. * * * [Emphasis added.]

A taxpayer's intent to have a remittance treated as a payment or as a mere deposit is generally to be established by all of the relevant facts and circumstances associated with the remittance. *Ewing v. United States, supra* at 503; *Ameel v. United States*, 426 F.2d 1270, 1273 (6th Cir. 1970); *Dowell v. Commissioner*, T.C. Memo. 1980-515, affd. without published opinion (10th Cir., Jan. 19, 1983), vacated on other grounds 465 U.S. 1001 (1984).

With the exception of remittances of estimated tax payments to be discussed further below, if a definite amount of tax liability for a year has not been ascertained or even pro-

33 to 11-36 (1991).

posed at the time of a remittance, a remittance generally will be presumed to have been intended by the taxpayer to be a deposit. *Fortugno v. Commissioner,* 353 F.2d at 435; *Plankinton v. United States,* 267 F.2d 278, 280 (7th Cir. 1959); *Perkins v. Commissioner, supra* at 754-756; *Fortugno v. Commissioner,* 41 T.C. 316, 322 (1963); see also Rev. Proc. 84-58, sec. 4.02, 1984-2 C.B. 501.

Particularly apropos the $25,000 remittance that is at issue in this case is the proposition that a disorderly or random remittance (that is made by a taxpayer arbitrarily, without regard to an orderly, apparent, or reasonably possible ultimate tax liability, and that is made prior to any determination by respondent of the taxpayer's tax liability) will generally be regarded not as a payment of tax but as a mere deposit. *Northern Natural Gas Co. v. United States,* 173 Ct. Cl. 881, 354 F.2d 310, 315 (1965); *Fortugno v. Commissioner,* 353 F.2d at 435; *Busser v. United States,* 130 F.2d 537, 538-539 (3d Cir. 1942).

Based upon the above general authorities and on the facts and circumstances of this case as applied to those general authorities, petitioners' April 15, 1982, $25,000 remittance should be treated as a deposit, not as a payment (and respondent makes no argument to the contrary).

When received on April 15, 1982, respondent treated the remittance as a deposit, not as a payment, by crediting the $25,000 to a suspense account, and respondent did not credit petitioners with any interest on the remittance. As of April 15, 1982, petitioners' joint Federal income tax liability for 1981 was not established by the filing of a tax return, by an audit by respondent, nor by the issuance by respondent of a notice of deficiency. The facts indicate that petitioners' $25,000 remittance was made by petitioners arbitrarily, in an amount which had no good faith relationship to petitioners' actual joint Federal income tax liability for 1981. Petitioners merely "dumped" $25,000 with respondent until either they or respondent could determine petitioners' Federal income tax liability for 1981.

In spite of the above authorities and the facts and circumstances of this case, however, respondent argues that petitioners' April 15, 1982, remittance must be treated, as a matter of law, as a payment of estimated tax under section 6015, and, under section 6513(b)(2), as a payment of tax

made by petitioners as of the due date of petitioners' 1981 joint Federal income tax return (namely, as of April 15, 1982). Respondent therefore argues that recovery of the remittance was, on June 7, 1989 (when petitioners filed their 1981 joint Federal income tax return), barred by the 3-year period of limitations under section 6511(b)(2)(A).[3] We disagree.

Initially, we note an obvious and significant difference between estimated tax payments under section 6015 and a payment of the estimated total tax liability that is required under section 6081 with a Form 4868 extension request. Estimated tax is a form of prepaid tax which is submitted with a Form 1040-ES in quarterly installments throughout the taxable year, or with a Form 1040 on or before January 31 of the succeeding year. By the statutory due date for the filing of a tax return (in this case April 15, 1982) and at the time a taxpayer attempts to estimate his or her total Federal income tax liability for purposes of obtaining an extension of time to file a tax return under section 6081, the date for making estimated tax payments for the prior year under section 6015 has expired.

In support of respondent's argument, however, respondent cites two Federal District Court opinions which hold that (regardless of obvious differences between estimated tax payments under section 6015 and the estimated total tax to be paid with extension requests under section 6081, and regardless of the typical indications of whether a remittance was intended as a deposit or as a payment) a remittance accompanying a Form 4868 extension request is to be treated, as a matter of law, as a payment of "estimated income tax" for purposes of the running of the refund period of limitations under section 6511. *England v. United States,* 760 F. Supp. 186, 187-188 (D. Kan. 1991); *Batton v. United States,* 60 AFTR

---

[3] Sec. 6511(b) provides in part, as follows:

SEC. 6511(b). LIMITATION ON ALLOWANCE OF CREDITS AND REFUNDS.—

\*       \*       \*       \*       \*       \*       \*

(2) LIMIT ON AMOUNT OF CREDIT OR REFUND.—

(A) LIMIT WHERE CLAIM FILED WITHIN 3-YEAR PERIOD.—If the claim was filed by the taxpayer during the 3-year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return. \* \* \*

2d 87-5983, at 87-5984 to 87-5985, 87-2 USTC par. 9622, at 89,931 (D. Md. 1987).[4]

Although *England v. United States, supra,* and *Batton v. United States, supra,* hold that a remittance accompanying a Form 4868 extension request is to be treated, as a matter of law, as a payment of estimated income tax under sections 6015 and 6513(b)(2), we do not agree with those holdings. The analysis set forth in *Batton v. United States, supra,* is conclusory, cursory, and in our opinion erroneous, and *England v. United States, supra,* simply follows *Batton v. United States, supra,* without providing any independent analysis.

The analysis of *Batton v. United States, supra,* is as follows: Because certain language in section 1.6081-4(a)(4), Income Tax Regs. (pertaining to remittances to be paid with Form 4868 extension requests), is similar to certain language in sections 6015 and 6513(b)(2) (pertaining to the payment of estimated income tax),[5] the language in section 1.6081-4(a)(4), Income Tax Regs.,[6] and the language in sections 6015 and 6513(b)(2) must have reference to the exact same thing. Having concluded, erroneously in our view, that the similar language in the above regulation and in the above statutes has reference to the same thing, the *Batton* analysis concludes that the operative provision of section 6513(b)(2) (which deems amounts paid as estimated taxes to be paid as of the due date of the return) must also apply to remittances

---

[4] In a few additional cases, it has been assumed that a remittance accompanying a Form 4868 extension request is a payment of estimated tax. In those cases, however, no argument to the contrary was made, and the courts did not hold that a remittance accompanying a Form 4868 extension request must be treated, as a matter of law, as a payment of estimated tax. See *Weigand v. United States,* 760 F.2d 1072, 1073 (10th Cir. 1985); *Allen v. Commissioner,* 99 T.C. 475, 476 (1992); *Galuska v. Commissioner,* 98 T.C. 661, 663 (1992).

[5] Sec. 6015(d) provides, in relevant part, as follows:

SEC. 6015(d). ESTIMATED TAX.—For purposes of this title, in the case of an individual, the term "estimated tax" means—

(1) the amount which the individual estimates as the amount of the income tax imposed by chapter 1 for the taxable year (other than the tax imposed by section 55 or 56), * * * [Secs. 55 and 56 provide for alternative minimum taxes for individuals and corporations.]

Sec. 6513(b)(2) provides as follows:

Any amount paid as estimated income tax for any taxable year shall be deemed to have been paid on the last day prescribed for filing the return under section 6012 for such taxable year (determined without regard to any extension of time for filing such return).

[6] Sec. 1.6081-4(a)(4), Income Tax Regs., provides as follows:

Such application for extension must show the full amount properly estimated as tax for such taxpayer for such taxable year, and such application must be accompanied by the full remittance of the amount properly estimated as tax which is unpaid as of the date prescribed for the filing of the return.

made by taxpayers with Form 4868 extension requests under section 1.6081-4(a)(4), Income Tax Regs. (i.e., that such remittances must also be regarded as a payment of estimated tax and as "paid as of the date of the return"). Respondent thus argues that petitioners' April 15, 1982, $25,000 remittance must be regarded as a payment of estimated tax and as paid as of the due date of petitioners' 1981 joint Federal income tax return (namely, April 15, 1982) and therefore that any refund thereof is barred by the 3-year period of limitations under section 6511(b)(2)(A).

As stated, the *Batton* analysis is conclusory and cursory, and it ignores significant other statutory language that indicates that payments of "estimated income tax" under sections 6015 and 6513(b)(2) are something quite different from taxpayers' remittances of the total "amount properly estimated as tax" in requesting extensions of time to file income tax returns under section 6081.

First, with regard to individual taxpayers, we note that the regulations under section 1.6081-4(a)(4), Income Tax Regs., clearly contemplate a calculation and a remittance of the balance of the full amount, without any exclusions, of the estimated total tax liability for the year with respect to which Form 4868 extension requests are filed. To the contrary, for purposes of sections 6015 and 6513(b)(2), "estimated income tax" for individual taxpayers is statutorily defined in section 6015(d) as excluding the "alternative minimum tax". Thus, despite similarity in language, the language in section 1.6081-4(a)(4) and (5), Income Tax Regs. (describing the amount to be estimated by taxpayers as tax in filing extension requests), includes the alternative minimum tax and is different from "estimated income tax" for purposes of sections 6015 and 6513(b)(2), which excludes the alternative minimum tax.

Also with regard to corporations, the provisions of section 6081(b) specify that corporations can get extensions for the filing of their income tax returns, among other things, upon remittance of "the amount properly estimated as its tax or the first installment thereof required under section 6152",[7]

---

[7] Sec. 6081(b) provides as follows:

SEC. 6081(b). AUTOMATIC EXTENSION FOR CORPORATION INCOME TAX RETURNS.—An extension of 3 months for the filing of the return of income taxes imposed by subtitle A shall be allowed

and section 6152 expressly provides that a corporation may pay its income tax in two equal installments, but the installment provisions of section 6152 expressly do *not* include the payment of "estimated income taxes".[8]

Accordingly, based on the above clear differences in the statutory scheme and in the language relating, on the one hand, to payments of estimated tax under sections 6015 and 6513(b)(2) and, on the other hand, to installment tax payments under section 6152 and to the remittance of amounts estimated as total tax due under section 1.6081-4(a)(4), Income Tax Regs., we decline to follow the holding of *England v. United States,* 760 F. Supp. 186 (D. Kan. 1991), and *Batton v. United States,* 60 AFTR 2d 87-5983, 87-2 USTC par. 9622 (D. Md. 1987). We conclude that the language "amount properly estimated as tax" under section 1.6081-4(a)(4), Income Tax Regs., is not synonymous with, nor covered by, the language regarding estimated tax payments under sections 6015 and 6513(b)(2). The operative provision, therefore, of section 6513(b)(2) (that deems any and all payments of estimated taxes as paid, as a matter of law, as of the due date of the related income tax returns) is not applicable to petitioners' remittance under section 1.6081-4(a)(4), Income Tax Regs., of the $25,000 submitted with petitioners' Form 4868 extension request.

Our analysis and conclusion herein are supported by analogous authority involving Form 4868 extension requests. For purposes of deciding whether automatic extensions to file income tax returns are valid, taxpayers are treated as having

---

any corporation if, in such manner and at such time as the Secretary may by regulations prescribe, there is filed on behalf of such corporation the form prescribed by the Secretary, and if such corporation pays, on or before the date prescribed for payment of the tax, the amount properly estimated as its tax or the first installment thereof required under section 6152; but this extension may be terminated at any time by the Secretary by mailing to the taxpayer notice of such termination at least 10 days prior to the date for termination fixed in such notice.

[8] Sec. 6152(a)(1) and (b)(2) provides as follows:

SEC. 6152(a). PRIVILEGE TO ELECT TO MAKE INSTALLMENT PAYMENTS.—

(1) CORPORATIONS.—A corporation subject to the taxes imposed by chapter 1 may elect to pay the unpaid amount of such taxes in two equal installments.

\*        \*        \*        \*        \*        \*        \*

(b) DATES PRESCRIBED FOR PAYMENT OF INSTALLMENTS.—

\*        \*        \*        \*        \*        \*        \*

(2) TWO INSTALLMENTS.—In any case (*other than payment of estimated income tax*) in which the tax may be paid in two installments, the first installment shall be paid on the date prescribed for the payment of the tax, and the second installment shall be paid on or before 3 months after such date. [Emphasis added.]

properly estimated their tax liability only when they make good faith and reasonable calculations of their tax liability. Where calculations and remittances of the balance of the total tax due that are associated with Form 4868 extension requests are not made in good faith and do not reasonably represent the taxpayers' tax liability, the extensions will not be recognized. *Condor International, Inc. v. Commissioner,* 98 T.C. 203, 224 (1992); *Crocker v. Commissioner,* 92 T.C. 899, 908 (1989).

In *Crocker v. Commissioner, supra,* remittances accompanying Form 4868 extension requests were less than one-fifth and less than one-half of the respective years' actual tax liabilities. The remittances were held not to constitute good faith calculations, and the extensions obtained were held to be invalid. *Id.* at 910.

In light of our conclusion that remittances made by taxpayers with Form 4868 extension requests are not necessarily to be treated, as a matter of law, as payments of tax as of the filing date of the associated income tax return, and based on the facts and circumstances of this case, petitioners' April 15, 1982, $25,000 remittance is to be treated as a deposit and not as a payment of taxes.

In light of our holding, respondent does not dispute the application of the relevant statute of limitations, as follows. Petitioners' 1981 joint Federal income tax liability was established and defined on June 7, 1989, when petitioners finally filed their 1981 joint Federal income tax return and claimed a credit thereon for the $25,000 remittance. At that point, petitioners' $25,000 remittance that had been held by respondent in a suspense account became a payment of tax, and the period of limitations began to run against petitioners for filing a claim for a refund of any portion of the $25,000 that constituted an overpayment.

Also, upon its filing on June 7, 1989, petitioners' 1981 joint Federal income tax return is to be regarded as a claim for refund for the portion of the $25,000 remittance that constituted an overpayment. Therefore, because petitioners' claim for refund was filed with respondent within 3 years of (indeed, simultaneously with) filing their 1981 joint Federal income tax return, and because the $25,000 remittance became a payment within 3 years of the filing of petitioners' 1981 joint Federal income tax return, the statute of limita-

tions does not bar the refund of any portion of petitioners' overpayment. Secs. 6511(b)(2)(A) and 6512(b)(2) (now sec. 6512(b)(3)).

*Decision will be entered under Rule 155.*