T.C. Memo. 2005-1

UNITED STATES TAX COURT

BARBARA DEATON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

RONNY DEATON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 12375-01L, 11121-02L.  Filed January 3, 2005.

In April 1994, Ps filed a request to extend the
time for filing their 1993 Federal income tax return
and remitted $125,000 therewith.  Ps did not file their
1993 return until Jan. 10, 2000, reporting an
overpayment of $50,221 thereon.  On their 1994-96
returns (also filed on Jan. 10, 2000), Ps sought to
apply that overpayment to their 1994-96 tax
liabilities.  R did not honor Ps' request, on the
ground that the amount Ps sought to so apply had been
"paid" in April 1994, which is outside the "lookback"
period of sec. 6511(b)(2)(A), I.R.C., that is
applicable to Ps' Jan. 2000 request for credit.  R
subsequently issued a Notice of Intent to Levy with
respect to Ps' 1994-96 taxable years, and Ps timely
requested a collection due process hearing.  R's
Appeals Office sustained the proposed levy and issued a
Notice of Determination to that effect to each of P-H
and P-W.

1.  <u>Held</u>:  R's Appeals Office's determinations that Ps'
April 1994 remittance was a payment rather than a deposit
and that the amount Ps sought to apply to their post-1993
tax liabilities therefore had been paid outside the
"lookback" period of sec. 6511(b)(2)(A), I.R.C., that is
applicable to Ps' Jan. 2000 request for credit are
sustained.

2.  <u>Held</u>, <u>further</u>, R's Appeals Office's
determination to allow the proposed levy to proceed is
sustained.

<u>Lawrence R. Jones, Jr.</u>, for petitioners.

<u>Marty J. Dama</u>, for respondent.

MEMORANDUM OPINION

HALPERN, <u>Judge</u>:  These cases are before the Court to review

determinations made by respondent's Appeals Office (Appeals) that

respondent may proceed to collect by levy unpaid income taxes

assessed against petitioners for 1994, 1995, and 1996.[1]  We

review those determinations pursuant to section 6330(d)(1).[2]

---

[1]  Petitioners are husband and wife who made joint returns
of income for the years in issue and for 1993.  Due to petitioner
husband's bankruptcy, respondent made separate determinations to
proceed with collection with respect to each petitioner, and each
petitioner filed a separate petition.  We have consolidated the
two resulting cases.  The issues and arguments are the same in
each case.

[2]  Unless otherwise indicated, all section references and
references to the Code are to the Internal Revenue Code of 1986,
as amended, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

Each petitioner's sole assignment of error is that Appeals erroneously characterized the remittance accompanying their filing extension request for 1993 as a payment rather than a deposit, thereby precluding, by operation of section 6511(b)(2)(A), the use of the overpayment attributable to that remittance as a credit against their 1994-96 tax liabilities.

## Background

The parties filed a stipulation of facts and submitted these cases without trial pursuant to Rule 122.  The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.  Petitioners resided in Winnsboro, Texas, at the time the petitions were filed.

On or about April 15, 1994, petitioners filed Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, with respect to their joint Federal income tax return for 1993 (the 1993 Form 4868).  The signature of "Tommy J. Chambers C.P.A." appears on the preparer's signature line of the 1993 Form 4868, along with a request that any correspondence regarding the application be sent to Gollob, Morgan, Peddy & Co. P.C. in Tyler, Texas.  As required by the form, petitioners listed an expected tax liability for 1993 of $138,883 on the 1993 Form 4868.  Petitioners also listed $13,883 of withholding for 1993 (1993 withholding) on the form, resulting in a "balance due" of $125,000.  Although the form did not

require a remittance of the balance due (as so computed) as a condition to obtaining the extension, petitioners submitted a check in the amount of $125,000 with the 1993 Form 4868 (the 1994 remittance). Petitioners made no additional remittances in respect of their 1993 tax liability.

Petitioners did not file their 1993 Federal income tax return (the 1993 return) until January 10, 2000. On the 1993 return, petitioners reported tax of $88,662, total payments of $138,883 (consisting of the $13,883 of 1993 withholding and the $125,000 1994 remittance), and an overpayment of $50,221.

Petitioners also filed their 1994-96 Federal income tax returns (the 1994, 1995, and 1996 returns, respectively) on January 10, 2000. On the 1994 return, petitioners treated the $50,221 overpayment reported on the 1993 return as a payment in respect of their 1994 tax liability. On the 1995 return, petitioners treated the remaining balance of that overpayment (i.e., the amount of the overpayment for 1993 remaining after application thereof to their 1994 tax liability) as a payment in respect of their 1995 tax liability. On the 1996 return, petitioners treated the remaining balance of the overpayment (i.e., the amount of the overpayment for 1993 remaining after application thereof to their 1994 and 1995 tax liabilities) as a payment in respect of their 1996 tax liability and requested that the resulting excess amount be applied to their 1997 tax

liability.

Shortly after receiving the 1993-96 returns in January 2000, respondent assessed the amounts reported as tax on those returns, applied the 1993 withholding ($13,883) and the 1994 remittance ($125,000) to the 1993 assessment ($88,662), and, contrary to petitioners' instructions as expressed in their 1994-96 returns, posted the remaining amount ($50,221) to "excess collections".

On August 3, 2000, respondent issued to petitioners a Notice of Intent to Levy with respect to their 1994-96 taxable years. Petitioners timely filed Form 12153, Request for a Collection Due Process Hearing, with an attached letter from their C.P.A. explaining their position (the C.P.A. letter). The C.P.A. letter bears the letterhead of Mike Wellman, C.P.A., with an address in Longview, Texas.[3] The sole argument raised in the C.P.A. letter in opposition to the proposed levy is that, contrary to what petitioners understood respondent's position to be, the 1994 remittance was a deposit rather than a payment. If accepted, that argument would have the effect of negating the applicability of section 6511(b)(2)(A), the provision which precludes the refund or credit of any amount "paid" more than 3 years (plus the period of any filing extension) prior to the date such credit or refund is claimed.

---

[3] Mr. Wellman's signature also appears on the preparer's signature line on each of the 1993-96 returns filed in January 2000, with the same address that appears on the C.P.A. letter.

In support of petitioners' argument, the C.P.A. letter describes their factual situation as follows:

> In 1993, the taxpayer's [sic] sold their business. At the time they sold it, they had no idea what their basis in it was, much less the tax that might be due. Furthermore, even before the return was due, they were engaged in a lawsuit with the purchaser regarding the "non-compete" portion of the contract for sale. It appeared that the ultimate outcome could result in the entire sale being voided. Not knowing what tax might be due, or even if <u>any</u> tax would be due, the taxpayers made a $125,000 payment with their extension in April 1994. This payment was not based on any estimate of the tax liability. It was made so that any interest and penalties could be avoided when the ultimate tax was calculated. It was very much akin to a pre-payment of a proposed examination assessment – except that they had <u>NO</u> idea the amount of the tax that may be due.
>
> Like many lawsuits, this one remained in the courts for many years. It was not until late 1998 that the Texas Supreme Court finally decided the case in favor of the taxpayers. Since so much time had passed, and due to poor record keeping and numerous other complicated transactions during 1993, it was not until late 1999 that the 1993 return could be completed. It was not until the return was completed that the tax liability was actually known. Until then, it did not even rise to the level of a wild guess. It was simply a deposit to avoid interest and penalties.

Appeals sustained the proposed levy, rejecting petitioners' argument that they intended the 1994 remittance to constitute a deposit rather than a payment of tax. As previously stated, petitioners' sole assignment of error is that Appeals erroneously characterized the 1994 remittance as a payment rather than a deposit.

Discussion

I.  Law

    A.  Collection Due Process

Section 6330(a) provides that the Commissioner must notify a taxpayer of his right to request a hearing before the Commissioner may collect unpaid Federal taxes from such taxpayer by levy.  If the taxpayer requests such a hearing, the Appeals officer conducting the hearing must verify that the requirements of any applicable law or administrative procedure have been met.  Sec. 6330(c)(1).  The taxpayer requesting the hearing may raise "any relevant issue relating to the unpaid tax or the proposed levy".  Sec. 6330(c)(2)(A).  The taxpayer "may also raise at the hearing challenges to the existence or amount of the underlying tax liability" if the taxpayer did not receive any statutory notice of deficiency for, or did not otherwise have an opportunity to dispute, such tax liability.  Sec. 6330(c)(2)(B).

Following the hearing, the Appeals officer must determine whether the proposed levy is to proceed, taking into account the verification the Appeals officer has made, the issues raised by the taxpayer at the hearing, and whether the proposed levy "balances the need for the efficient collection of taxes with the legitimate concern of the * * * [taxpayer] that any collection action be no more intrusive than necessary."  Sec. 6330(c)(3).  We have jurisdiction to review such determinations where we have

jurisdiction over the type of tax involved in the case.  Sec. 6330(d)(1)(A); see <u>Iannone v. Commissioner</u>, 122 T.C. 287, 290 (2004).  Where the underlying tax liability is properly at issue, we review the determination on a de novo basis.  E.g., <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000).  Where the underlying tax liability is not properly at issue, we review the determination for abuse of discretion.  <u>Id.</u> at 182.

B.  <u>Credit or Refund of Overpayment</u>

1.  <u>Code Provisions</u>

Section 6402(a) provides generally that the Secretary may, within the applicable period of limitations, credit a taxpayer's overpayment against any other Federal tax liability of that taxpayer and refund any remaining balance.

Section 6511(a) provides that the general period of limitations for filing a claim for credit or refund ends (1) 3 years after the filing of the return in question, or (2) 2 years after the payment of the tax, whichever period expires later.  Under the "lookback" rule of section 6511(b)(2)(A), if the claim is filed within the 3-year period of limitations, the amount of the credit or refund is limited to the amount of tax paid by the claimant during the 3-year period immediately preceding the filing of the claim, extended by any period of extension for filing the return in question.

2. <u>Judicially Created Distinction Between Payments and Deposits</u>

a. <u>In General</u>

i. <u>Rosenman v. United States</u>

In <u>Rosenman v. United States</u>, 323 U.S. 658 (1945), the Supreme Court recognized that not all taxpayer remittances to the Internal Revenue Service (IRS) constitute "payments" of tax. In the context of the "lookback" rule of the predecessor of section 6511(b)(2), the Court held that the remittance before it, made in connection with the procurement of a 2-month extension for filing an estate tax return, was in the nature of a deposit that attained "payment" status only as the Commissioner applied it in satisfaction of subsequently assessed amounts. <u>Id.</u> at 662. Notably, the transmittal letter accompanying the remittance stated in part as follows: "This payment is made under protest and duress, and solely for the purpose of avoiding penalties and interest, since it is contended by the executors that not all of this sum is legally or lawfully due." <u>Id.</u> at 660-661.

ii. <u>Judicial Interpretations of Rosenman</u>

Most lower courts, including this Court, have interpreted <u>Rosenman v. United States</u>, <u>supra</u>, as sanctioning a facts and circumstances approach to determining whether a remittance in respect of a tax is a payment of tax or a deposit, at least in situations where the Code is silent on the issue. E.g., <u>Ertman v. United States</u>, 165 F.3d 204, 206-207 (2d Cir. 1999); <u>Ott v.</u>

United States, 141 F.3d 1306, 1308 (9th Cir. 1998); Risman v. Commissioner, 100 T.C. 191, 197-198 (1993) (all discussing Rosenman progeny). Under that approach, courts generally seek to determine whether, based on all of the relevant facts and circumstances associated with the remittance, the remitter intended the remittance to satisfy what he or she regarded as an existing tax liability. See, e.g., Risman v. Commissioner, supra at 197 (and cases cited therein). Such intent is generally considered to be lacking in the case of a random remittance (e.g., one made without reference to a return and prior to any IRS audit[4]) of an amount that bears no good faith relationship to the remitter's reasonably possible ultimate tax liability. See id. at 198.

In contrast to the foregoing, the Court of Appeals for the Fifth Circuit (to which an appeal in these cases likely would go) interpreted Rosenman v. United States, supra, as establishing a generally applicable rule that a remittance in respect of a tax cannot become a "payment" of that tax for purposes of section 6511 until the Commissioner assesses the tax in question. See Thomas v. Mercantile Natl. Bank, 204 F.2d 943, 944 (5th Cir. 1953); see also Ford v. United States, 618 F.2d 357, 359 (5th Cir. 1980) (following Thomas); Harden v. United States, 76 AFTR

_____

[4] The Commissioner has published guidelines for taxpayers seeking to make deposits in the audit context in Rev. Proc. 84-58, 1984-2 C.B. 501.

2d 95-7980, 96-1 USTC par. 50,088 (5th Cir. 1995) (following Thomas and Ford).

###### iii.  Baral v. United States

In Baral v. United States, 528 U.S. 431, 437-438 (2000), a section 6511 case involving income tax withholding and a remittance of estimated tax, the Supreme Court rejected the interpretation of Rosenman v. United States, supra, by the Court of Appeals for the Fifth Circuit as being at odds with the plain language of section 6513(b)(1) and (2).  Section 6513(b)(2) provides that, for purposes of section 6511 or 6512,[5] remittances of estimated income tax in respect of a taxable year are deemed paid on the deadline (determined without regard to extensions) for filing that year's return.  Section 6513(b)(1) contains a similar rule for income tax withholding.  In a footnote, the Court stated:  "We need not address the proper treatment under § 6511 of remittances that, unlike withholding and estimated income tax, are not governed by a 'deemed paid' provision akin to § 6513(b)."  Baral v. United States, supra at 439 n.2.  Thus, in the context of remittances not described in section 6513(b), the facts and circumstances approach to distinguishing between payments and deposits, as developed under Rosenman and its progeny, retains its viability.  See VanCanagan v. United States,

---

[5]  Sec. 6512(b) contains rules relating to overpayment determinations by the Tax Court.  Sec. 6512(b)(3) provides "lookback" rules in part by reference to sec. 6511(b)(2).

231 F.3d 1349, 1352-1353 (Fed. Cir. 2000) (discussing <u>Rosenman</u> and <u>Baral</u>).

The Court of Appeals for the Fifth Circuit has not, since <u>Baral</u>, addressed the payment/deposit distinction.

b. <u>Form 4868 Remittances</u>

i. <u>Background</u>

Section 6081(a) authorizes the Secretary to grant extensions of time to file tax returns. Regulations promulgated under section 6081 provide that an individual can obtain an automatic 4-month extension of time for filing his or her income tax return by filing Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return. Sec. 1.6081-4(a), Income Tax Regs. Such an application must show "the full amount properly estimated as tax" for the taxable year. Sec. 1.6081-4(a)(4), Income Tax Regs.[6]

ii. <u>Risman v. Commissioner</u>

In <u>Risman v. Commissioner</u>, <u>supra</u>, a case involving section 6512(b)(3), we rejected the Commissioner's argument that a remittance accompanying Form 4868 (Form 4868 remittance) is an "amount paid as estimated income tax" within the meaning of

_____

[6] Prior to its amendment in 1996, that regulation also required applicants to <u>remit</u> the "balance due" shown on Form 4868 in order to obtain an extension. The IRS, however, eliminated that requirement for 1992 and subsequent taxable years in Notice 93-22, 1993-1 C.B. 305, 306. See also T.D. 8651, 1996-1 C.B. 312, 313 (individuals may rely on Notice 93-22 for taxable years ending on or after Dec. 31, 1992, and before Dec. 31, 1995).

section 6513(b)(2), which, by virtue of that status, constitutes a payment as a matter of law. In so doing, we declined to follow England v. United States, 760 F. Supp. 186 (D. Kan. 1991), and Batton v. United States, 60 AFTR 2d 87-5983, 87-2 USTC par. 9622 (D. Md. 1987), in which the respective courts accepted that argument based on the reference to "amount properly estimated as tax" in section 1.6081-4(a)(4), Income Tax Regs.[7] In particular, we stated:

> We conclude that the language "amount properly estimated as tax" under section 1.6081-4(a)(4), Income Tax Regs., is not synonymous with, nor covered by, the language regarding estimated tax payments under sections 6015[8] and 6513(b)(2). The operative provision, therefore, of section 6513(b)(2) (that deems any and all payments of estimated taxes as paid, as a matter of law, as of the due date of the related income tax returns) is not applicable to petitioners' remittance under section 1.6081-4(a)(4), Income Tax Regs., of the $25,000 submitted with petitioners' Form 4868 extension request.

Risman v. Commissioner, supra at 202. We looked instead to the

---

[7] In an earlier case, the Court of Appeals for the Tenth Circuit had concluded, without specific reference to the language of sec. 1.6081-4(a)(4), Income Tax Regs., that sec. 6513(b)(2) applied to the Form 4868 remittance at issue in that case. Weigand v. United States, 760 F.2d 1072, 1074 (10th Cir. 1985). We construed Weigand as assuming, without holding, that a Form 4868 remittance is a payment of estimated income tax within the purview of sec. 6513(b)(2). Risman v. Commissioner, 100 T.C. 191, 200 n.4 (1993). The district court in England v. United States, 760 F. Supp. 186 (D. Kan. 1991) (which was appealable to the Tenth Circuit) apparently had reached the same conclusion, as it did not rely on Weigand in its analysis.

[8] Former sec. 6015 required individuals in certain circumstances to file annual declarations of estimated income tax.

facts and circumstances of the case in concluding that the Form 4868 remittance at issue constituted a deposit rather than a payment.  Id. at 203.

We based our rejection of the Batton/England analysis in part on other statutory language indicating that remittances of "estimated income tax" as contemplated in section 6513(b)(2) "are something quite different from taxpayers' remittances of the total 'amount properly estimated as tax' in requesting extensions of time to file income tax returns under section 6081."  Risman v. Commissioner, supra at 201.  For instance, we observed that section 6015(d) (as in effect at the time of the taxpayers' remittance) provided that, for all purposes of the Code, the term "estimated tax" does not encompass the individual alternative minimum tax (AMT).  Id.  Conversely, section 1.6081-4(a)(4), Income Tax Regs., contains no such AMT carve-out for purposes of determining the "amount properly estimated as tax" in the context of obtaining a filing extension.[9]  Id.

Since our report in Risman v. Commissioner, supra, four Courts of Appeals have concluded, based at least in part on the application of section 6513(b)(2), that a Form 4868 remittance is

_____

[9]  We also cited language in sec. 6081(b) and former sec. 6152 (both as in effect at the time of the taxpayers' remittance) which, taken together, revealed a disconnect between a corporation's payment of an "amount properly estimated as its tax" in the context of a filing extension request and its "payment of estimated income tax" pursuant to former sec. 6154. See Risman v. Commissioner, supra at 201-202.

a payment as a matter of law for purposes of the "lookback" rules of section 6511(b)(2).  Ertman v. United States, 165 F.3d 204 (2d Cir. 1999); Dantzler v. United States, 183 F.3d 1247 (11th Cir. 1999); Ott v. United States, 141 F.3d 1306 (9th Cir. 1998); Gabelman v. Commissioner, 86 F.3d 609 (6th Cir. 1996), affg. T.C. Memo. 1993-592.[10]

## II.   Arguments of the Parties

### A.   Respondent's Argument

Respondent's principal argument is that, by operation of section 6513(b)(2), petitioners' 1994 remittance was a payment (rather than a deposit) as a matter of law, with the result that, pursuant to section 6511(b)(2)(A), the overpayment for 1993 is not available as a credit against petitioners' 1994-96 tax liabilities.  In support of that argument, respondent contends that our analysis in Risman v. Commissioner, 100 T.C. 191 (1993), is obsolete in view of the fact that the additional statutory language we examined therein had been repealed by the time petitioners filed their 1993 Form 4868.  Respondent also points to the "weight of authority" that is contrary to Risman.[11]

---

[10]   Although we reached the same result in Gabelman v. Commissioner, T.C. Memo. 1993-592, affd. 86 F.3d 609 (6th Cir. 1996), as did the Court of Appeals for the Sixth Circuit on appeal, we did so based on the facts and circumstances of the case, consistent with Risman v. Commissioner, supra.

[11]   In addition to the four cases cited above, respondent includes David v. United States, 80 AFTR 2d 97-8427, 98-1 USTC
(continued...)

Alternatively, respondent contends that, even under a facts and circumstances analysis, the 1994 remittance was a payment rather than a deposit.  In that regard, respondent rejects petitioners' argument (discussed below) that the contemporaneous view of the Court of Appeals for the Fifth Circuit regarding pre-assessment remittances is relevant to these cases.

B.  Petitioners' Argument

Petitioners argue that the proper characterization of a remittance to the IRS as a payment of tax or a deposit depends on the facts and circumstances associated with the remittance. Moreover, petitioners argue that the facts and circumstances surrounding the 1994 remittance establish their contemporaneous intent to treat the remittance as a mere deposit rather than a payment of tax.  On brief, petitioners focus primarily on the fact that, when they made the 1994 remittance, they resided within the geographic jurisdiction of a Court of Appeals which, at that time, subscribed to the view that pre-assessment

---

[11](...continued)
par. 50,125 (1st Cir. 1997), and Weigand v. United States, supra, among the Court of Appeals cases holding that Form 4868 remittances are payments as a matter of law.  In David, 80 AFTR 2d at 8428, 8429, the Court of Appeals for the First Circuit specifically declined to decide that issue, concluding instead that, in the absence of any evidence to the contrary, the taxpayer presumably intended his Form 4868 remittance to discharge the liability in question, thereby rendering the remittance a payment.  Regarding the Weigand case, see supra note 7.

remittances are deposits as a matter of law.  In petitioners'
words:

> Under the legal landscape in the Fifth Circuit at the
> time which was part of the facts and circumstances, any
> taxpayer remitting to the IRS knew that, barring some
> affirmative indication of payment prior to assessment,
> the remittance was a deposit.  Petitioners' remittance
> prior to assessment without any indication that the
> remittance be treated as a payment rather than a
> deposit should govern. [Fn. ref. omitted.]

> \*       \*       \*       \*       \*       \*       \*

> Petitioners' position is not the application of
> the "per se" rule that may indeed have been overruled
> in principle by Baral, but is simply the application of
> the facts and circumstances as Petitioners found them
> at the time in order to determine whether the objective
> circumstances indicated Petitioners' intention to
> direct that the remittance be treated as a deposit.

## III.  Analysis

### A.  Respondent's Principal Argument

In Risman v. Commissioner, supra, we considered and rejected
respondent's argument that, by operation of section 6513(b)(2), a
Form 4868 remittance is a payment as a matter of law.  While the
emerging "weight of authority" contrary to Risman may, under the
appropriate circumstances, warrant a reconsideration of our
analysis therein, we do not undertake that exercise today.  We do
not do so because we can sustain respondent's determination on
the basis of his alternative argument that, even under a facts
and circumstances analysis, the 1994 remittance was a payment
rather than a deposit.  See VanCanagan v. United States, 231 F.3d
at 1352-1353.  Any comprehensive review of Risman must await the

day when it would make a difference in the outcome of a case before us.

Notwithstanding the foregoing, we do revisit <u>Risman</u> for the limited purpose of addressing (and rejecting) respondent's technical argument that, due to the repeal of the additional statutory language we examined in <u>Risman</u>, our analysis therein is no longer viable.  Had our analysis rested solely on the specific wording of those provisions (i.e., former sections 6015 and 6152 and section 6081(b), see <u>supra</u> part I.B.2.b.ii. and note 9), respondent's argument might have some force.[12]  However, quite apart from our analysis of those provisions, we made the following general observations:

> Initially, we note an obvious and significant difference between estimated tax payments * * * and a payment of the estimated total tax liability * * * with a Form 4868 extension request.  Estimated tax is a form of prepaid tax which is submitted with a Form 1040-ES in quarterly installments throughout the taxable year * * *.  By the statutory due date for the filing of a tax return (in this case April 15, 1982) and at the time a taxpayer attempts to estimate his or her total Federal income tax liability for purposes of obtaining an extension of time to file a tax return under section 6081, the date for making estimated tax payments for the prior year * * * has expired.

<u>Risman v. Commissioner</u>, <u>supra</u> at 199; see also sec. 6654(b)(2) (interest charge on calendar year taxpayer's underpayment of a

---

[12]  Even if our analysis had been so limited, respondent does not suggest that Congress repealed or amended those provisions (in three separate pieces of legislation passed by three different Congresses) in order to clarify the scope of sec. 6513(b)(2).

required installment of estimated tax ceases to accrue on April 15 of the following year). Those observations in no way depend on the subsequently repealed statutory language we examined in Risman.

B. Facts and Circumstances Analysis

1. Relevance of Existing Fifth Circuit Precedent

We first consider petitioners' argument concerning the "legal landscape in the Fifth Circuit". As a matter of logic, the "legal landscape in the Fifth Circuit" can be probative of petitioners' intent regarding the 1994 remittance only if they were aware of that precedent when they made the remittance. Petitioners have made no allegation to that effect, either in their administrative appeal or in connection with these proceedings, nor does the record contain any evidence that would support such an allegation.[13] To the extent petitioners are suggesting that we should legally presume their awareness of that precedent for these purposes, they do not cite, nor are we aware of, any authority for such a proposition. We therefore conclude that, absent any allegations or evidence that these petitioners (as opposed to the generic "any taxpayer remitting to the IRS"

---

[13] Assuming, arguendo, that the requisite intent could be supplied by petitioners' agents (e.g., the C.P.A. whose signature appears on the 1993 Form 4868), petitioners have not alleged that any such agent acted on the basis of, or was even aware of, the Fifth Circuit position, nor does the record contain any evidence that would support such an allegation.

referenced in their brief) in fact "knew that, barring some affirmative indication of payment prior to assessment, the remittance was a deposit" under Fifth Circuit precedent at the time, the existence of such precedent is not relevant to our determination of petitioners' intent with regard to the 1994 remittance.

### 2. Petitioners' Failure To Develop the Record

Petitioners apparently are content to rely solely on the representations of Mr. Wellman contained in the C.P.A. letter to establish their intent regarding the 1994 remittance. There is no indication in the record that petitioners provided Appeals with any evidence that would corroborate those representations, nor do petitioners allege that Appeals refused to consider any such evidence.[14] Furthermore, because petitioners chose (with respondent's acquiescence) to submit these cases without trial pursuant to Rule 122, there is no pertinent evidence before us that was not before Appeals.[15]

Petitioners' exclusive reliance on the C.P.A. letter is all the more puzzling considering the source. There is no indication

---

[14] In her case memorandum for each petitioner, respondent's Appeals officer states that petitioners did not present any documents to elaborate on the litigation involving the sale of their business.

[15] Accordingly, since we reach the same result as did Appeals, our disposition of these cases does not depend on whether we review Appeals' determinations for abuse of discretion or on a de novo basis.

in the record that Mr. Wellman, the author of that letter, was involved in any way with the filing of the 1993 Form 4868 in April 1994 or was otherwise involved in petitioners' affairs at that time. Had petitioners gone to trial, they presumably could have elicited the testimony of Mr. Chambers (the C.P.A. whose signature appears on the 1993 Form 4868) regarding the circumstances that allegedly rendered their 1993 tax liability inestimable as of April 1994. Because petitioners chose not to do so, we may presume that such testimony would have been unfavorable to them. See, e.g., ASAT, Inc. v. Commissioner, 108 T.C. 147, 172 (1997) (citing Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947)). Relying on the C.P.A. letter, petitioners have failed to convince us that, as of April 1994, their 1993 tax liability was inestimable and the 1994 remittance was intended as a deposit.

> 3. Inconsistencies Between the C.P.A. Letter and Petitioners' 1993 Return

Moreover, the C.P.A. letter itself does not square with information from petitioners' 1993 return contained in the record. For instance, the 1993 return belies the assertion in the C.P.A. letter that petitioners' ignorance of their 1993 tax liability in April 1994 was attributable to the sale of their business in, and "numerous other complicated transactions during", 1993. The only sale referenced in the 1993 return is an

installment sale that occurred in 1990,[16] and the 1993 return hardly attests to the occurrence of "numerous other complicated transactions" during 1993.[17]  Furthermore, the 1993 return belies the allegations in the C.P.A. letter that the $125,000 amount of the 1994 remittance "was not based on any estimate of the tax liability" and "did not even rise to the level of a wild guess" as to the amount of that liability.  Specifically, if one calculates petitioners' tentative 1993 tax without any basis offset to the capital gain they reported for 1993 relating to the 1990 sale, but otherwise in accordance with the Schedule D tax worksheet attached to the 1993 return, the resulting tentative tax is approximately $125,000.

### 4.  Risman Is Factually Distinguishable

These cases are distinguishable from Risman v. Commissioner, 100 T.C. 191 (1993), in which we concluded, on the basis of the facts and circumstances of that case, that the taxpayers' remittance with their filing extension request was a deposit rather than a payment.  In Risman v. Commissioner, supra at 193-194, 198, the Commissioner initially treated the remittance as a

---

[16]  Petitioners reported on the 1993 return that they had received almost $500,000 from that sale prior to 1993.  The record does not reflect whether petitioners experienced similar difficulties calculating their 1990-92 tax liabilities.

[17]  Other than wages, interest, and gain from the 1990 sale, the 1993 return lists "other income" of $600 and a $24,229 nonpassive loss from two S corporations.

deposit, and the taxpayers effectively confirmed their understanding of that treatment in writing approximately 14 months later, well before the Commissioner recharacterized the remittance as a payment in his records.[18] In the instant case, petitioners did not claim deposit status until approximately 6-1/2 years after they made the 1994 remittance, and they did so only in response to respondent's commencement of collection activity.[19] Furthermore, in Risman v. Commissioner, supra at 198, we found that the taxpayers arbitrarily chose the amount of the

---

[18] The Commissioner apparently recharacterized the remittance as a payment solely on the theory that it was a payment as a matter of law. See Risman v. Commissioner, 100 T.C. 191, 198 (1993) (Commissioner did not dispute that, under a facts and circumstances analysis, the remittance would be treated as a deposit).

[19] A more analogous case is VanCanagan v. United States, 231 F.3d 1349 (Fed. Cir. 2000). In that case, the taxpayers sought to avoid dismissal of their refund suit on the strength of an affidavit of the accountant who had prepared the Form 4868 accompanying the remittance at issue. In upholding the trial court's dismissal, the Court of Appeals for the Federal Circuit stated:

> The accountant's explanation of what he did and his characterization of the $150,000 remittance as a "deposit," made more than 5 ½ years after the extension application was filed and the remittance made, is insufficient to raise any valid factual issue on whether the $150,000 remittance was a deposit.

Id. at 1354. While we do not suggest that the noncontemporaneous statements of a taxpayer's representative, standing alone, are never sufficient to corroborate that taxpayer's claimed intent with regard to a remittance, we do submit that such statements are particularly suspect where, as is apparently the case here, the representative did not represent the taxpayer in connection with the remittance.

remittance at issue.  As discussed above, petitioners' 1993 return suggests that they did not randomly choose the amount of the 1994 remittance.

### 5. Conclusion

For the reasons discussed above, we sustain Appeals' conclusion that petitioners failed to establish their alleged intent that the 1994 remittance be regarded as a deposit rather than a payment.

## IV. Conclusion

We sustain Appeals' findings (1) that the 1994 remittance was a payment rather than a deposit, and (2) that, having been paid outside the "lookback" period of section 6511(b)(2)(A), the portion of the 1994 remittance in excess of petitioners' 1993 tax liability may not be credited against petitioners' 1994-96 tax liabilities.  As petitioners have made no other assignments of error, we sustain Appeals' determinations to allow the proposed levy to proceed.

To reflect the foregoing,

Decisions will be entered

for respondent.